Argued and submitted January 11, affirmed September 27, 1995, petition for review denied June 18, 1996 (323 Or 483)

# STATE OF OREGON,
*Respondent,*

*v.*

# CURTIS J. GEFRE,
*Appellant.*

## (Z127859; CA A82910)

903 P2d 386

John Henry Hingson, III, argued the cause and filed the brief for appellant.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Defendant appeals his conviction for driving under the influence of intoxicants, ORS 813.010, assigning error to the trial court's denial of his motion to exclude evidence of his refusal to perform field sobriety tests and his refusal to submit to a breath test. We affirm.

■ We view the facts in the light most favorable to the state. *State v. Brown*, 310 Or 347, 350, 800 P2d 259 (1990). Gresham Police Officer Bunker saw defendant driving a truck during the evening of June 30, 1993. Defendant turned right without signaling and drove very close to the left-hand curb, almost hitting it. Defendant quickly over-corrected, swerving over the line dividing the two eastbound lanes. Bunker was joined by Officer Gerkman, and the two followed defendant for four or five blocks. During that time, defendant weaved in and out of his lane. Gerkman turned on his overhead lights, signaling defendant to stop. After some time, defendant pulled off the road and came to a stop, but then coasted an additional ten feet before making a final stop.

The officers spoke to defendant. Bunker could not understand defendant's speech, as it was "low," so he asked defendant to spit out the tobacco that he had in his mouth. Defendant made a "token" effort to spit out the tobacco. Gerkman saw that defendant had spit and tobacco on his upper lip and along his right hand. As Bunker moved closer, defendant turned away. Both officers smelled a strong odor of alcohol over the tobacco and noticed that defendant's eyes were bloodshot. Gerkman noticed that defendant swayed as he stood and walked. Upon inquiry, defendant stated that he had had nothing to drink that evening. When the officers challenged that statement, defendant insisted that he had consumed no alcohol.

After informing defendant of his rights, Bunker asked defendant if he would submit to unspecified field sobriety tests. Defendant said, "No." Defendant was then arrested and taken to the police station. At the station, defendant was again informed of his rights. He was asked to submit to a breath test and refused.

Defendant was charged with driving under the influence of intoxicants. Before trial, defendant moved to suppress

evidence of his refusal to submit to field sobriety tests and his refusal to submit to a breath test. Defendant argued, among other things, that the admission of those refusals would violate his right against self-incrimination contained in Article I, section 12, of the Oregon Constitution. The trial court denied the motion, and the case proceeded to trial before a jury.

At trial, the state elicited testimony as to the circumstances of defendant's arrest. On cross-examination, defense counsel elicited testimony from Bunker that some of defendant's driving had been satisfactory; he had stopped at a red light and made some turns without problems. Gerkman testified that he could not recall any specific words that defendant had slurred. That cross-examination testimony aside, defendant offered no evidence in his defense.

In closing, the prosecution argued:

"Other evidence we have are the defendant's refusal on both the field sobriety tests and the breath test. On the field sobriety tests, he was warned that evidence of a refusal to take these tests would be used against him. He knew that, and he refused nevertheless. What does that tell you about the defendant's state of mind? So afraid was he of the results of any possible field sobriety tests that he was willing to have evidence of refusing to take those tests before you today rather than have you see the results of those field sobriety tests.

"* * * * *

"Now, the defense is liable to tell you, well, don't consider those refusals on the field sobriety tests, and certainly don't consider the refusal to take the intoxilyzer tests, because that would require you to engage in speculation. Ladies and gentlemen, that's not speculation, and the implied consent form proves that it's not speculation, because * * * this implied consent form tells you that evidence may be offered against, and certainly that evidence is being offered against the defendant today, and you're entitled to consider that.

"[Y]ou're certainly entitled to consider the refusal of the field sobriety tests and the refusal on the breath test as the very powerful evidence that it is indicating the guilt of the defendant."

The jury found defendant guilty. On appeal, defendant assigns error to the trial court's denial of his motion to suppress evidence of his refusal to submit to field sobriety tests and his refusal to submit to a breath test.

■■ We first address the admission of evidence of defendant's refusal to submit to a breath test. Defendant asserts that that evidence is irrelevant, because the state is not required to prove consciousness of guilt. The state contends that evidence of defendant's refusal is relevant to the issue of whether defendant was intoxicated at the time of his arrest. The state is correct.

In *State v. Anderson*, 53 Or App 246, 252, 631 P2d 822 (1981), we held that "the inferences to be drawn from defendant's refusal are * * * relevant to the issue of whether or not he was intoxicated at the time of his arrest." That the state is not *required* to prove defendant's "consciousness of guilt" does not mean that evidence of that conscience has no tendency to establish defendant's condition at the time of his arrest. *Id.*; *see also State v. Gainer*, 70 Or App 199, 204, 689 P2d 323 (1984); *City of Portland v. Stanley*, 53 Or App 254, 256-57, 631 P2d 826, *rev den* 291 Or 771 (1981), *cert den* 455 US 952 (1982).

■ Defendant next argues that the trial court erred in admitting evidence of his refusal to submit to a breath test, because the probative value of that evidence is substantially outweighed by the danger of unfair prejudice. OEC 403. Defendant does not explain how he was unfairly prejudiced by the admission of that evidence; he merely concludes that that is so. The state argues that ORS 813.310 unambiguously permits evidence of a refusal to take a breath test to be admitted, without reference to whether its probative value is substantially outweighed by its prejudicial effect.

Concerning the same argument, we noted in *Anderson* that the legislature already has determined that evidence of a refusal to take a breath test may be admitted into evidence. We then said:

> "This is a matter for the trial court to decide in the first instance in the light of all the circumstances of the particular case. * * * We do note that, in our view, * * * it will be a rare case indeed in which [the] defendant is entitled to have this

evidence kept from the trier of fact. The legislature has declared this evidence to be relevant; trial courts should not ignore the legislative policy."

53 Or App at 252. This is not such a rare case, in which evidence of a refusal must be excluded. Defendant's position at trial was that the state had failed to offer evidence of his intoxication, that its investigation was "incomplete" and that proper investigation by the police would have included such evidence. The state offered evidence that it had attempted to investigate further but was thwarted by defendant's refusal. Under the circumstances, we cannot say that the trial court's decision was improper.

■ ■     Defendant next argues that the admission of his refusal to submit to a breath test violates his right against self-incrimination embodied in Article I, section 12, of the Oregon Constitution. That section provides, in part:

> "No person shall be * * * compelled in any criminal prosecution to testify against himself."

Defendant recognizes that, in *State v. Ratliff*, 82 Or App 479, 485, 728 P2d 896 (1986), *aff'd on other grounds* 304 Or 254, 744 P2d 247 (1987), we said:

> "The privilege against compelled self-incrimination contained in Article I, section 12, of the Oregon Constitution, does not prevent the admission of evidence that a defendant has refused to take a breath test. *State v. Earley*, 78 Or App 646, 717 P2d 1228 (1986); *State v. Green*, 68 Or App 518, 684 P2d 575, *rev den* 297 Or 601 (1984) [*overruled on other grounds in State v. Panichello*, 71 Or App 519, 525, 692 P2d 720 (1984)]; *State v. Gardner*, 52 Or App 663, 629 P2d 412, *rev den* 291 Or 419 (1981)."

Nevertheless, defendant insists that that statement is not dispositive, because,

> "most of the cases relied upon in support of that statement do not comply with the 'plain statement' rule of *Michigan v. Long*, 463 US 1032, 103 S Ct 3469, 3476, 77 L Ed 2d 1201 (1983)."

The state argues that the admissibility of a defendant's refusal to submit to a breath test is well settled under Oregon case law and that compliance with the "plain statement" rule is irrelevant. We agree with the state.

■ The plain statement rule refers to a jurisdictional policy of the United States Supreme Court. Generally, the Court will not review a state court judgment when there is a nonfederal ground that independently and adequately supports the judgment. *Long*, 463 US at 1038. When a state court decision appears to rely primarily on federal law, or is interwoven with federal law, and the adequacy and independence of any possible state law ground is unclear, the Court will assume that the state court decided the case in the way that it did because it believed that federal law required that result. *Id.* at 1040-41. The plain statement rule simply provides an exception to that general policy:

> "If a state court chooses merely to rely on federal precedents as it would on the precedents of all other jurisdictions, then it need only make clear by a plain statement in its judgment or opinion that the federal cases are being used only for the purpose of guidance, and do not themselves compel the result that the court has reached. * * * If the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent grounds, we, of course, will not undertake to review the decision."

*Id.* at 1041. Those federal considerations have no bearing on whether this court should follow its own precedent. *Ratliff* is still a correct statement of law.

■ Defendant next asserts that the admission of evidence of his refusal to submit to a breath test violated his rights to be free from unreasonable searches as guaranteed by Article I, section 9, of the Oregon Constitution and by the Fourth Amendment to the United States Constitution. According to defendant, as a general rule, it is impermissible to refer to a person's decision to exercise a constitutional right in circumstances in which it is likely that the jury will draw an inference of guilt from that evidence, because that would render meaningless the right itself. Defendant argues that, in this case, it was error to admit evidence of his refusal to take a breath test, because that evidence permitted the jury to infer guilt from his exercise of his constitutional right under the state and federal constitutions to be free from unreasonable searches. The state argues that defendant had no constitutional right to refuse the test, and, therefore, the admission of defendant's refusal did not implicate defendant's constitutional rights. We agree with the state again.

Defendant's argument incorrectly assumes that he had a right to refuse the breath test in the first place when, in fact, he did not. Because we conclude that Bunker had probable cause to believe that defendant had been driving under the influence, and because the officer was faced with exigent circumstances occasioned by the evanescent nature of defendant's blood-alcohol content, defendant had no constitutional right to refuse the administration of a breath test. *State v. Nagel*, 320 Or 24, 31-34, 37, 880 P2d 451 (1994). Therefore, defendant's rights under Article I, section 9, and the Fourth Amendment were not implicated. We conclude that the trial court did not err in admitting evidence of defendant's refusal to take a breath test.

We turn to defendant's assignment of error regarding the trial court's admission of his refusal to submit to field sobriety tests. Defendant argues that the admission of that evidence violated his right against self-incrimination. Or Const, Art I, § 12. The state concedes that, under *State v. Fish*, 321 Or 48, 61, 893 P2d 1023 (1995), the admission of defendant's refusal to submit to field sobriety tests was error. The state nevertheless contends that that error was harmless.

A verdict against a criminal defendant may be affirmed notwithstanding a violation of the Oregon Constitution if the error was "harmless." *State v. Walton*, 311 Or 223, 230-31, 809 P2d 81 (1991). To find an error harmless, we must conclude that there is (1) substantial and convincing evidence of the defendant's guilt, and (2) little, if any, likelihood that the error affected the jury's verdict. *Id.* Evidence that a defendant has refused to testify has a " 'presumably harmful effect.' " *State v. Halford*, 101 Or App 660, 663, 792 P2d 467 (1990) (quoting *State v. Wederski*, 230 Or 57, 60, 368 P2d 393 (1962)).

In this case, the evidence of guilt was substantial and convincing. Within a matter of minutes, defendant turned without signaling, nearly struck a curb, swerved over several dividing lanes, weaved in and out of his lane, failed to immediately respond to Gerkman's overhead lights and exhibited difficulty stopping his truck. Defendant's speech was slurred, his eyes were bloodshot, he had spit and tobacco on his face and hand, and he swayed as he stood and walked. In addition,

defendant emitted a strong odor of alcohol despite his use of chewing tobacco and his insistence that he had consumed no alcohol. Simply put, defendant exhibited the classic indicia of intoxication. With the exception of testimony that some of defendant's driving was satisfactory, the state's evidence was uncontradicted.

In addition, there is little likelihood that the error affected the verdict. As we have noted, evidence of defendant's refusal to consent to a breath test was properly before the jury. There also was unchallenged evidence that defendant turned away, from the officers, presumably to avoid inspection, and that he denied having consumed any alcohol, despite strong indications to the contrary. As a result, there already was before the jury evidence from which the prosecution could argue that defendant had something to hide, namely his intoxication. In short, the evidence of defendant's refusal to submit to field sobriety tests did nothing more than permit the jury to draw the same inference that could be made from other properly admitted evidence. *State v. Hayes*, 135 Or App 506, 513, 899 P2d 1198 (1995).

Affirmed.