Argued and submitted April 5, 2016, affirmed July 12, petition for review allowed November 14, 2017 (362 Or 175)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RODNEY BANKS, SR.,
*Defendant-Appellant.*

Multnomah County Circuit Court
140130317; A158466

401 P3d 1234

William Uhle argued the cause for appellant. With him on the brief was Thuemmel, Uhle & Eder.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Tookey, Presiding Judge, and DeHoog, Judge, and Sercombe, Senior Judge.

## SERCOMBE, S. J.

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010, reckless driving, ORS 811.140, and second-degree criminal mischief, ORS 164.354. Defendant assigns error to the trial court's denial of his motion to suppress evidence of his refusal to consent to a breath test of his blood alcohol content (BAC) that police requested pursuant to the "implied consent law." *See* ORS 813.100(1) ("Any person who operates a motor vehicle upon premises open to the public or the highways of this state shall be deemed to have given consent, subject to the implied consent law, to a chemical test of the person's breath[.]"). He contends that evidence of his refusal should have been suppressed because admission of that evidence, pursuant to ORS 813.310,[1] violated his right against self-incrimination under Article I, section 12, of the Oregon Constitution,[2] and his right to be free from unreasonable searches and seizures under Article I, section 9, of the Oregon Constitution.[3] The state responds that, under the circumstances of this case, it is well established that defendant's refusal to consent to the breath test was admissible at trial. On review for errors of law, *State v. Holdorf*, 355 Or 812, 814, 333 P3d 982 (2014), we affirm.

"In reviewing a denial of a motion to suppress, we are bound by the trial court's findings of historical fact that are supported by evidence in the record." *Id.* To the extent that the trial court did not make findings of fact, and where there are facts that could be decided in more than one way, we presume that the court made factual findings consistent with its ultimate conclusion. *Id.*

---

[1] ORS 813.310 provides:

"If a person refuses to submit to a chemical test under ORS 813.100 or refuses to consent to chemical tests under ORS 813.140, evidence of the person's refusal is admissible in any civil or criminal action, suit or proceeding arising out of acts alleged to have been committed while the person was driving a motor vehicle on premises open to the public or the highways while under the influence of intoxicants."

[2] Article I, section 12, provides, in part, that "[n]o person shall * * * be compelled in any criminal prosecution to testify against himself."

[3] Article I, section 9, provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

Here, the relevant facts are few and undisputed. Defendant was arrested for DUII and transported to a Portland Police Bureau holding facility. At the facility, Portland Police Officer Ladd asked defendant if he would be willing to take a breath test, to which defendant was "deemed to have given consent" under ORS 813.100(1), but defendant refused to take the test. Ladd then read defendant the statement of the "rights and consequences" under the implied consent law, as required by ORS 813.130(1). That statement informed defendant that, among other things, if he refused to take the breath test, "evidence of [his] refusal *** may be offered against [him]," ORS 813.130(2)(a), his driving privileges would be suspended, ORS 813.130(2)(c), and he would be subject to a fine, ORS 813.130(2)(f). Ladd then asked defendant if he was willing to consent to the test, and defendant again refused. Defendant was subsequently charged with two counts of DUII, one count of reckless driving, and one count of second-degree criminal mischief. Prior to trial, the state dismissed one of the DUII counts.

Defendant moved to suppress any evidence of his refusal to take the breath test. Defendant argued that the evidence should be suppressed because, insofar as it allows the state to offer evidence of a defendant's refusal to consent to a breath test as substantive evidence of guilt at trial, ORS 813.100 is unconstitutional. According to defendant, allowing the state to use evidence of his refusal would violate his rights under Article I, section 12, because his refusal to consent was compelled testimonial evidence to be used against him in a criminal proceeding. Defendant also asserted that the use of that evidence would violate his rights under Article I, section 9, because it placed too high a burden on the exercise of his right to be free from unreasonable searches and seizures. The state responded that it is a "well-established principle of law" that evidence of a defendant's refusal to consent to a breath test is admissible at a DUII trial.

Following a hearing, the trial court denied defendant's motion to suppress. The court concluded that, under *State v. Gefre*, 137 Or App 77, 903 P2d 386 (1995), *rev den*, 323 Or 483 (1996), evidence of a defendant's refusal to consent to a breath test is not subject to suppression if the

defendant has no constitutional right to refuse the breath test because the seizure of that evidence is supported by probable cause and exigent circumstances. Thus, the court ruled that,

> "to the extent you're not really arguing that there was a lack of probable cause in this case or a lack of exigent circumstances, that seemed to be the basis of their concept that the refusal is admissible because I know, from your perspective, they're incorrectly—the Court of Appeals is incorrectly assuming that—that that matters.
>
> "So I guess for that reason then I will—although I understand your perspective, you made a good record here, I'm going to deny [the motion] based on the record we have and the arguments here today."[4]

Following a trial, a jury found defendant guilty of DUII. Defendant waived his right to a jury trial on the reckless driving and criminal mischief counts, and he was convicted by the court of those charges. The court entered a judgment consistent with those verdicts.

The parties reiterate their trial court arguments on appeal. Defendant does not dispute that the police had probable cause to believe that he had been driving under the influence of intoxicants and that the dissipation of alcohol in his blood was an exigent circumstance. Rather, he contends that "[t]he dissipation of alcohol as an exigency is irrelevant to the admissibility of a refusal to consent to a warrantless search and seizure." According to defendant, "[t]he implied consent statutes, * * * allowing [a search of defendant's BAC] and penalizing defendant for refusing the search," violate "defendant's Article I, section 9[,] right to be free from unreasonable searches and seizures and his Article I, section 12[,] right to remain silent."

We begin with defendant's Article I, section 12, argument. "Under Article I, section 12, of the Oregon Constitution,

---

[4] Defendant also brought a parallel motion to hold ORS 813.100 unconstitutional in its entirety. The trial court denied that motion, explaining that, "to the extent it's not duplicative of the motion to suppress[,] * * * it seems to be just a motion asking for some sort of declaratory relief, which wouldn't be appropriate in this context." The court also concluded that defendant's arguments in support of that motion failed on their merits. Defendant does not assign error to that ruling on appeal.

individuals may not be compelled to disclose their beliefs, knowledge, or state of mind"—referred to as "testimonial evidence"—"to be used in a criminal prosecution against them." *State v. Fish*, 321 Or 48, 56, 893 P2d 1023 (1995). The constitutional privilege against self-incrimination "appl[ies] to only testimonial evidence"; it does not apply to nontestimonial evidence related to the "defendant's physical characteristics, such as identity, appearance, and physical condition." *State v. Tiner*, 340 Or 551, 561, 135 P3d 305 (2006), *cert den*, 549 US 1169 (2007). Evidence of the results of a breath test is not testimonial. A breath test yields only "physical evidence of intoxication," which is not testimonial, because it conveys nothing about the person's "beliefs, knowledge, or state of mind." *State v. Nielsen*, 147 Or App 294, 304, 936 P2d 374, *rev den*, 326 Or 68 (1997). In contrast, evidence of a person's refusal to take a breath test is testimonial evidence because it "inferentially may communicate the person's belief" that he or she will fail the test. *Fish*, 321 Or at 56.

That defendant's refusal was testimonial in nature does not end our inquiry. The use of that evidence at trial would violate defendant's right against self-incrimination only if the state *compelled* defendant to provide that testimonial evidence. *See* Or Const, Art I, § 12 ("No person shall * * * be *compelled* * * * to testify against himself." (Emphasis added.)); *Fish*, 321 Or at 56 ("[c]oncluding that evidence regarding defendant's refusal to perform field sobriety tests is 'testimonial' does not end our inquiry" because "Article I, section 12, prohibits the state from *compelling* an individual to provide 'testimonial' evidence" (emphasis in original)). As such,

"[t]he dispositive issue is not whether evidence of the refusal is communicative but whether the communication is the result of governmental compulsion of the sort which Article I, section 12, forbids. The right not to testify against oneself does not prevent the state from using a defendant's out-of-court statements or other communicative activity as evidence. Rather, it prevents the state from *requiring* a defendant to provide such statements or activity. Thus, inculpatory statements to friends, relatives, accomplices and others are generally admissible if there is no improper governmental activity in procuring them. Statements to

police or other authorities are also admissible if voluntarily made, either before custodial interrogation begins or, if made during custodial interrogation, after a knowing and voluntary waiver of *Miranda* rights."

*State v. Green*, 68 Or App 518, 523, 684 P2d 575 (1984), *overruled on other grounds by State v. Panichello*, 71 Or App 519, 692 P2d 720 (1984) (emphasis in original).

Here, the state did not compel defendant to provide his testimonial refusal to consent to the breath test. *Fish* is particularly instructive. In that case, the defendant moved to suppress evidence of his refusal to perform a field sobriety test. 321 Or at 50. The trial court granted that motion, but we reversed. *Id*. On review, the Supreme Court reversed our decision, concluding that the defendant had been compelled to provide the testimonial evidence of his refusal. *Id*. at 50-51.

That determination depended on the court's conclusion that certain field sobriety tests themselves produced testimonial evidence. *Id*. at 60. The field sobriety test results were testimonial because parts of the test required the defendant to "communicate information regarding [his] state of mind" and "dr[ew] upon [his] memory, perception, and ability to communicate." *Id*.

Although the court noted that "[t]he right against self-incrimination does not preclude the state from requiring an individual to make certain choices"—including unpleasant choices—the court explained that, "[w]here every 'choice' is a course of conduct that the state could not compel an individual to take, mandating by law that an individual make a 'choice' among them constitutes compulsion under Article I, section 12." *Id*. at 57-58. Because both the refusal to complete the field sobriety test and the results of the test itself were testimonial, the defendant was compelled to testify against himself no matter what he chose; "[i]n other words, defendant was not given a choice as to *whether* he would incriminate himself, but only as to *how* he would incriminate himself." *Id*. at 60 (emphases in original). Therefore, the court held that, "[b]y creating a scheme whereby defendant could not invoke his right against self-incrimination, the automatic admission of defendant's refusal to perform

field sobriety tests under [the implied consent law] would violate Article I, section 12[.]" *Id.* at 61.

This case is distinguishable from *Fish* because, as noted, a breath test does not yield testimonial evidence. Defendant's choice between taking the breath test and facing penalties for refusing to do so did not place him in the position of having to choose between different methods of self-incrimination. Instead of providing the state with a testimonial refusal, he could have consented to the test and provided only physical evidence. Thus, putting defendant to the choice between producing the BAC evidence or not did not violate his right against self-incrimination. *See State v. Earley*, 78 Or App 646, 649, 717 P2d 1228 (1986) ("Because breathalyzer evidence is not constitutionally protected, a person has no constitutional right to refuse to take a breath test, and the introduction of evidence that defendant refused to take a sobriety test does not violate his right against self-incrimination."); *see also Gefre*, 137 Or App at 82 ("'The privilege against compelled self-incrimination contained in Article I, section 12, of the Oregon Constitution, does not prevent the admission of evidence that a defendant has refused to take a breath test.'" (Quoting *State v. Ratliff*, 82 Or App 479, 485, 728 P2d 896 (1986), *aff'd on other grounds*, 304 Or 254, 744 P2d 247 (1987).)); *State v. Herndon*, 116 Or App 457, 462-63, 841 P2d 667 (1992) ("The privilege against self-incrimination is not implicated by the requirement that a defendant submit to a breath test. The results are not testimonial or communicative but are evidence to which the state is entitled.").

Further, to the extent that defendant argues that his refusal to take the breath test was compelled, as a matter of law, by a coercive atmosphere created by the severity of the penalties stated in the implied consent warnings, that argument is without merit. Even assuming that the state exerted coercive pressure on defendant by reading him the statement of "rights and consequences," the state exerted that pressure in order to induce defendant to consent to the breath test and provide nontestimonial physical evidence of his BAC. *See State v. Cabanilla*, 351 Or 622, 632, 273 P3d 125 (2012) (characterizing the implied consent "rights and consequences" statement as reflecting a legislative purpose

of "coerc[ing] a driver's submission to take the [BAC] tests"). It can hardly be said that the state compelled defendant to refuse to take the test, and thereby provide testimonial evidence, where it has created steep penalties to discourage him from doing so.

Turning to the Article I, section 9, contention, as noted, defendant claims that evidence of his refusal to consent to a breath test improperly burdened his constitutional right to refuse to consent to a search by the state.[5] Where such a request is supported by probable cause and exigent circumstances, it is a request to conduct a reasonable search. *See State v. Meharry*, 342 Or 173, 177, 149 P3d 1155 (2006) (explaining that warrantless search or seizure is reasonable—and therefore constitutional—under the exigent circumstances exception to the warrant requirement, if it is "supported by probable cause and conducted under exigent circumstances," *e.g.*, circumstances in which "immediate action is necessary to prevent the disappearance, dissipation, or destruction of evidence"). As we have previously held, where the request is reasonable, a "defendant [has] no constitutional right to refuse the administration of a breath test." *Gefre*, 137 Or App at 83-84 (concluding that the use of evidence of the defendant's refusal to take a breath test did not burden his rights under Article I, section 9, because the defendant had no right to refuse consent where probable cause and exigent circumstances supported administering

---

[5] Oregon courts have analyzed conduct that burdens the exercise of a constitutional right as a violation of that right itself. *See, e.g., State v. Moore*, 354 Or 493, 504, 318 P3d 1133 (2013) (assuming without deciding that, "at least under some circumstances, use of evidence of defendant's refusal [to consent to a BAC test] against him would violate his Article I, section 9, right to be free from unreasonable searches and seizures"); *Gefre*, 137 Or App at 83-84 (analyzing the propriety of the admission of evidence of defendant's refusal to take a breath test under Article I, section 9). However, we note that the United States Supreme Court has examined the issue under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, *see South Dakota v. Neville*, 459 US 553, 565, 103 S Ct 916, 74 L Ed 2d 748 (1983) (rejecting a due process challenge to the admission of evidence of a refusal to a blood test, because the use of the evidence was not "fundamentally unfair"). Moreover, we have also commented that police observation of a defendant's refusal to consent to a breath test is neither a search nor a seizure. *See State v. Greenough*, 216 Or App 426, 431, 173 P3d 1227 (2007), *rev den*, 344 Or 280 (2008) (explaining that a defendant's refusal to consent to a breath test is neither "protected nor private," so observation of his refusals are not searches; and those observations also are not seizures because a defendant "has no property interest in the perception of his actions by the police").

the breath test); *see State v. Greenough*, 216 Or App 426, 430, 173 P3d 1227 (2007), *rev den*, 344 Or 280 (2008) ("[I]n *Gefre*, we rejected the contention that refusal of a reasonable demand for a breath test of blood alcohol content is an exercise of a constitutional right under Article I, section 9. The admission of evidence of such a refusal does not prejudice any exercise of rights under Article I, section 9."); *State v. Ohm*, 224 Or App 390, 197 P3d 1136 (2008) (same).

Instead, the right to refuse to take a breath test is statutory in nature. *See* ORS 813.100(2) ("No chemical test of the person's breath or blood shall be given * * * if the person refuses the request of a police officer to submit to the chemical test after the person has been informed of consequences and rights as described under ORS 813.130."). That statutory right to refuse the test is qualified by the condition, in ORS 813.310, that evidence of a person's refusal to submit to the test "is admissible in any civil or criminal action." *See State v. Gardner*, 52 Or App 663, 669, 629 P2d 412, *rev den*, 291 Or 419 (1981) ("In Oregon, a person arrested for driving while under the influence of intoxicants has the [statutory] right to refuse to submit to a breath test. However, this right to refuse is expressly conditioned on the admission of evidence of the refusal in cases such as the one before us." (Citations omitted.)); *see also Cabanilla*, 351 Or at 628 ("A person may, of course, *physically* refuse to take the test, and the legislature has chosen to forbid the use of physical force to compel drivers to submit to the test. At the same time, however, the implied consent statutes mandate that a person who has refused to take the test must suffer certain consequences. Among other things, when a person refuses to take a breath test, * * * evidence of the person's refusal may be offered against the person[.]" (Emphasis in original; citation and footnote omitted.)).

Defendant relies on *State v. Moller*, 217 Or App 49, 174 P3d 1063 (2007), for the proposition that a person's invocation of a constitutional right cannot be used as substantive evidence of guilt. However, defendant's refusal to consent to the breath test stands in contrast to the defendant's refusal to consent to a warrantless search of his car in *Moller*, which we assumed, without analysis, was an assertion of the defendant's rights under Article I, section 9. 217 Or App

at 52. We then explained that the use of such evidence was improper because evidence that a person has refused to "consent to something he or she is not legally required to do is not admissible." *Id.*; *see also State v. Smallwood*, 277 Or 503, 505, 561 P2d 600, *cert den*, 434 US 849 (1977) ("[I]t is usually reversible error to admit evidence of the exercise by a defendant of the *rights which the constitution gives him* if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury." (Emphasis added.)).

Here, however, defendant does not challenge the trial court's conclusion that Ladd had probable cause to believe that defendant had been driving under the influence of intoxicants, and that exigent circumstances existed based on the dissipation of alcohol in his bloodstream. Because Ladd's request that defendant take the breath test was reasonable, defendant did not have a constitutional right—but only a statutory power—to refuse to consent. In sum, a person does not have a derivative constitutional right to exclude "evidence of an invocation of something that itself is not a constitutional right." Kenneth J. Melilli, *The Consequences of Refusing Consent to a Search or Seizure: The Unfortunate Constitutionalization of an Evidentiary Issue*, 75 S Cal L Rev 901, 922 (2002); *cf. Gardner*, 52 Or App at 669-70 ("[B]ecause the defendant had no constitutional privilege not to submit to the breath test and because her statutory right not to take the test is expressly qualified by statute, her Fifth Amendment privilege against self-incrimination was not violated."); *South Dakota v. Neville*, 459 US 553, 565, 103 S Ct 916, 74 L Ed 2d 748 (1983) (explaining that, as a matter of due process, it was not "fundamentally unfair for South Dakota to use the refusal to take the [BAC] test as evidence of guilt," because "[r]espondent's right to refuse the blood-alcohol test *** is simply a matter of grace bestowed by the South Dakota legislature"). Thus, introducing evidence of defendant's refusal did not burden his exercise of his Article I, section 9, right to be free from unreasonable searches and seizures.[6]

---

[6] Defendant also relies on the Supreme Court's decision in *Moore*, 354 Or 493, which he contends has "called into question the constitutionality of punishing a person for exercising their right to be free from unreasonable searches and

For the foregoing reasons, we conclude that the state's use of evidence of defendant's refusal to consent to a breath test at trial did not violate defendant's right against compelled self-incrimination under Article I, section 12, or his right to be free from unreasonable searches and seizures under Article I, section 9. Therefore, the trial court did not err in denying defendant's motion to suppress.

Affirmed.

---

seizures when asked to submit to a warrantless search of their breath or blood for [BAC]." Defendant reaches that conclusion based on the fact that the *Moore* court "assum[ed], *arguendo*, that defendant is correct that, at least under some circumstances, use of evidence of defendant's refusal against him would violate his Article I, section 9, right to be free from unreasonable searches or seizures." *Id.* at 504. *Moore*, however, goes no further than making that assumption "[f]or purposes of analysis" of the "narrow question" of whether the part of the implied consent statement of "rights and consequences" providing that evidence of a person's refusal to consent to a BAC test "may be used against him" rendered the defendant's consent to a BAC test involuntary. *Id.* at 505. The court ultimately concluded that the defendant's consent to the test was not involuntary as a result of those warnings. *Id.* at 505-06. The court expressed no opinion on the propriety of the use of evidence of a defendant's refusal to take a breath test, and the opinion does not undercut the holdings of *Gefre, Gardner,* or any decisions following those cases.