Argued and submitted August 28, affirmed October 21, reconsideration denied December 18, 1987, petition for review denied January 20, 1988 (305 Or 22)

## STATE OF OREGON,
*Respondent,*

*v.*

## THOMAS WALTER BLOSSOM,
*Appellant.*

(30110; 30111; 30112; 30113; 30114; 30115; 30116; 30117;
CA A39383 (Control); CA A39384; CA A39385;
CA A39386; CA A39387; CA A39388; CA A39389; CA A39390)
(Cases Consolidated)

744 P2d 281

John P. Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

In this consolidated criminal appeal, defendant seeks reversal of his convictions on one charge of racketeering,[1] six charges of theft in the first degree and one charge of attempted theft in the first degree. We affirm.

Defendant worked as a salesman and independent sales agent for the Northwestern Mutual Life Insurance Co. (NML). From January, 1984, to April, 1985, he solicited applications for annuities from several individuals and directed them to pay initial premium payments, which exceeded $200 in each case, to "Thomas Blossom NML Account." He endorsed applicants' checks and deposited them

---

[1] ORS 166.720 provides:

"(1) It is unlawful for any person who has knowingly received any proceeds derived, directly or indirectly, from a pattern of racketeering activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest or equity in, real property or in the establishment or operation of any enterprise.

"(2) It is unlawful for any person, through a pattern of racketeering activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any real property or enterprise.

"(3) It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.

"(4) It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsections (1), (2) or (3) of this section.

"(5)(a) Any person convicted of engaging in activity in violation of the provisions of subsections (1) to (4) of this section is guilty of a Class A felony."

ORS 166.715(3) provides:

" 'Pattern of racketeering activity' means engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, including a nexus to the same enterprise, and are not isolated incidents, provided at least one of such incidents occurred after November 1, 1981, and that the last of such incidents occurred within five years after a prior incident of racketeering conduct."

ORS 166.715(5) provides:

" 'Racketeering activity' means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce or intimidate another person to commit:

"(a) Any conduct which constitutes a crime, as defined in ORS 161.515, under any of the following provisions of the Oregon Revised Statutes[.]

"* * * * *

"(K) ORS 164.015, 164.045, 164.055, 164.075 to 164.095, 164.125, 164.135, 164.140, 164.215, 164.225 and 164.245 to 164.265, relating to theft, burglary, criminal trespass and related offenses[.]"

in his personal accounts. In some cases, he mailed ficticious confirmation statements to the applicants but never delivered the annuity applications and initial payments to NML.

At trial, defendant unsuccessfully attempted to introduce evidence that insurance was available that would reimburse the applicants as probative of his lack of intent to defraud or injure the victims. He also asserted that NML owed him certain sums and that he withheld the premiums to satisfy that claimed debt as part of an "honest claim of right" defense. He was found guilty on all eight charges in a consolidated jury trial. The trial court imposed a separate sentence for each offense. The sentences for the thefts and the attempted theft were imposed to run concurrently with each other but consecutively to the racketeering sentence.

On appeal, defendant assigns as error the court's ruling excluding the evidence and giving and failing to give certain jury instructions on his defenses. He further assigns as error the trial court's failure to merge all of the convictions into a single conviction and sentence for racketeering. We find no merit in any of defendant's assignments of error regarding evidentiary rulings or the jury instructions. We address only the issue of merger.

Defendant contends that the theft offenses merged into the racketeering offense and that only one sentence could have been imposed. The state relies on federal cases, which hold that a court may impose separate convictions and consecutive sentences for a racketeering offense and the underlying predicate acts.

The answer to the question whether there should be multiple convictions when a defendant violates more than one criminal statute must first be sought in legislative directives, if they exist, or in the intentions and policies plausibly attributable to the legislature. *State v. Cloutier,* 286 Or 579, 585, 596 P2d 1278 (1979). Therefore, we must determine whether the legislature intended that a defendant who violates the racketeering statute (RICO) may also be convicted of the underlying predicate crimes which constitute the pattern of racketeering activity and whether consecutive sentences may be imposed.

The RICO statute, ORS 166.715 to 166.735, was enacted in 1981 and was modeled after the federal statute. The

relevant provisions are comparable.[2] Under such circumstances, federal cases interpreting the federal statute, especially those decided before Oregon adopted its statute, are persuasive in interpreting the intent of the Oregon legislature.[3] *See Redmont Ready-Mix, Inc. v. Coats,* 283 Or 101, 110, 582 P2d 1340 (1978); *see also Ahern v. Gaussoin,* 611 F Supp 1465, 1494 (DC Or. 1985). The state correctly points out that the federal RICO statute has been consistently interpreted to allow separate convictions and consecutive sentences for a RICO offense and the predicate crimes. The federal courts have determined that the intent of Congress was clearly to provide for new penal prohibitions and enhanced sanctions including separate convictions and consecutive sentences for the RICO and predicate offenses. *United States v. Persico,* 774 F2d 30 (2nd Cir 1985); *United States v. Rone,* 598 F2d 564 (9th Cir 1979), *cert den* 445 US 946 (1980).[4] We agree with the reasoning of those cases. We hold that the trial court did not err in imposing multiple convictions and consecutive sentences for the racketeering and theft offenses.[5]

Affirmed.

---

[2] Compare the provisions of 18 USC §§ 1961(1)(5), and 1962(a)(b)(c)(d) with ORS 166.720 and ORS 166.715(3), (5), n 1 *supra.*

[3] In those states in which the RICO statute was patterned after the federal statute, the courts have also adhered to the federal authority. *See, e.g., State v. Johnson,* 105 NM 63, 728 P2d 473 (1986).

[4] *United States v. Rone, supra,* 598 F2d at 571, states:

"There is nothing in the RICO statutory scheme which would suggest that Congress intended to preclude separate convictions or consecutive sentences for a RICO offense and the underlying or predicate crimes which make up the racketeering pattern. The racketeering statutes were designed primarily as an additional tool for the prevention of racketeering activity, which consists in part of the commission of a number of other crimes. The Government is not required to make an election between seeking a conviction under RICO, or prosecuting the predicate offenses only. Such a requirement would nullify the intent and effect of the RICO prohibitions. * * *

"Congress clearly intended the Act to provide for new penal prohibitions and enhanced sanctions. If we were to accept appellants' theory that sentences imposed under RICO and those imposed for the predicate offenses may not run consecutively, then Congress' purpose would be thwarted. If the RICO sentence must run concurrently with a sentence of any predicate crime, there would be no 'enhanced' penalties. A conviction under RICO would, in fact, grant immunity for the offenses charged in the 'pattern of racketeering.' "

[5] In the light of our holding, defendant's argument that the sentence for attempted theft should run concurrently rather than consecutively with the sentence for racketeering is meritless.