Argued and submitted November 29, 1995, affirmed June 19, petition for review denied October 22, 1996 (324 Or 323)

## STATE OF OREGON,
*Respondent,*

*v.*

## ANTHONY PATRICK GLEASON,
*Appellant.*

## (94C-20164; CA A86307)

919 P2d 1184

Mary M. Reese, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Christine Chute, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Defendant appeals his convictions for racketeering, ORS 166.720, first-degree theft, ORS 164.055, and first-degree aggravated theft, ORS 164.057. We affirm.

We state the facts in the light most favorable to the state. *State v. Gefre*, 137 Or App 77, 79, 903 P2d 386 (1995). Defendant is a self-employed horse trainer. He also buys and sells horses. On a number of occasions he purchased or sold horses at Woodburn Auction Yard.

During the five-week period between November 16, 1993, and December 24, 1993, defendant sold at least seven horses. In each of the seven instances, the horses had been stolen late at night and sold the following day. Circumstantial evidence, the details of which are not relevant to the disposition of the appeal, tied defendant to each of the thefts. Tire treads and footprints at the scenes of the thefts also established that the thefts were accomplished by means of a trailer that belonged to someone other than defendant and with the assistance of at least one individual other than defendant. Defendant had no connection with any of the victims, save one.

Defendant was charged with one count of racketeering, based on five of the thefts. He also was charged separately with four counts of theft in the first degree and one count of aggravated theft in the first degree. Defendant pleaded not guilty. At the close of the state's case, defendant moved for a judgment of acquittal on the racketeering charge; the trial court denied the motion. During defendant's case, he called Gary Wivag to testify on his behalf. On cross-examination, Wivag denied—contrary to the testimony of two police officers—that defendant had told him that he stole the horses and that Wivag had reported that to the police. Wivag did admit that he had talked with the police officers, but he testified that, when the police tried to get him to persuade defendant to talk to them, he told the officers that defendant would do so only in the presence of an attorney. Wivag then testified that the police officers told him that there was "[n]o sense talking to [defendant], then." On rebuttal, the state called the two officers to testify that, in fact, they would not

have refused to talk to defendant merely because he wanted an attorney present. Defendant objected on relevancy grounds, and the trial court overruled the objection. Defendant moved for leave to call a surrebuttal witness. The trial court denied the motion. The jury found defendant guilty on all counts. The trial court imposed consecutive sentences of imprisonment.

On appeal, defendant first assigns error to the trial court's denial of his motion for a judgment of acquittal. Defendant argues that, at best, the state's evidence shows only that he stole horses with the assistance of another individual. That, he argues, is insufficient to establish the crime of racketeering, which he contends requires proof of defendant's participation in an "enterprise." According to defendant, an "enterprise" means an "on-going organization," not merely the commission of crimes with more than one person.

The state does not quarrel with defendant's contention that a necessary element of the crime of racketeering is participation in an enterprise, nor does it contest defendant's argument that an enterprise is an on-going organization. The state nevertheless argues that its evidence was sufficient for two alternative reasons. First, the state contends, there is evidence that defendant sold at least some of the stolen horses at Woodburn Auction Yard, which is an "on-going organization." Second, the state argues, aside from that, the evidence shows that, in a little over one month, defendant stole seven horses and sold each within a day of the theft, that another person's trailer was used in the process, that defendant knew only one of his victims and that at least one other individual assisted him in stealing the horses. From that evidence, the state reasons, a jury could conclude that defendant had accomplices who were giving him information about the victims and their horses, who provided him equipment with which to steal the animals and who assisted him in removing them from their owners' premises.

Defendant replies that Woodburn Auction Yard cannot constitute an "enterprise" within the meaning of the racketeering statute, because there is no evidence that the business was more than an innocent and "unwitting" participant. At oral argument, defendant also argued—for the first

time—that the state cannot rely on its argument that Woodburn Auction Yard is the enterprise, because the state failed to include an allegation to that effect in its indictment.

■■ In reviewing the trial court's decision, we examine the evidence in the light most favorable to the state to determine whether any rational trier of fact could have found that defendant committed the thefts through his association with an "enterprise." *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). In conducting our review, we are required to construe the terms of the racketeering statute, which necessitates determining, if possible, the legislature's intentions, by examining the text of the statute in its context and, if necessary, its legislative history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

ORS 166.720(3) provides:

"It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt."

The statute does not precisely define the term "enterprise." ORS 166.715(2) does, however, provide that the term includes the following:

"[A]ny individual, sole proprietorship, partnership, corporation, business trust or other profit or nonprofit legal entity, and includes any union, association or group of individuals associated in fact although not a legal entity, both illicit and licit enterprises and governmental and nongovernmental entities."

We note that the statute explicitly refers to "any" legal entity, even governmental entities. We note also that there is no language in the statute limiting an enterprise to one that shares with a defendant a common purpose of engaging in a course of criminal conduct or, for that matter, any conduct. The statute instead requires only that there be proof of the existence of an enterprise with which a defendant associates to conduct or participate in a pattern of racketeering activity.

To the extent that the language of the statute contains any ambiguity on the point, the legislative history

removes all doubt. Oregon's racketeering statute, enacted in 1981, was modeled after Florida's statute, which, in turn, was modeled after the federal Racketeer Influenced and Corrupt Organization (RICO) Act. 18 USC §§ 1961-1968. *See generally* David B. Frohnmayer, Donald C. Arnold and H. Robert Hamilton, *RICO: Oregon's Message to Organized Crime*, 18 Willamette L Rev 1, 4 (1982). The federal RICO Act provides that it is unlawful for any person

"employed by or associated with any enterprise * * * to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

18 USC § 1962(c). The federal statute defines "enterprise" to include

"any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

18 USC § 1961(4). Before the adoption of the Oregon statute, the federal counterpart's reference to "enterprise" had been broadly interpreted to include both licit and illicit businesses, including government agencies, through which a defendant conducted his or her pattern of racketeering activity. *See, e.g., United States v. Karas*, 624 F2d 500, 504 (4th Cir 1980), *cert den* 449 US 1078 (1981) (county law enforcement agency is an enterprise); *United States v. Swiderski*, 593 F2d 1246, 1248-49 (DC Cir 1978), *cert den* 441 US 933 (1979) (restaurant is an enterprise); *United States v. Dozier*, 493 F Supp 554, 554 (MD La 1980) (state department of agriculture is an enterprise); *United States v. Sisk*, 476 F Supp 1061, 1062-63 (MD Tenn 1979) (governor's office is an enterprise). At least one court, however, had ruled to the contrary. *See United States v. Mandel*, 415 F Supp 997, 1020-22 (D Md 1976) (State of Maryland is not an enterprise). In response to the potential for conflict on the scope of the definition of "enterprise," the Florida legislature broadened the definition of the term expressly to include sole proprietorships, business trusts, chartered or unchartered unions, illicit and licit enterprises, governmental and other entities, without any requirement that the enterprise be a willing, knowing or direct participant in the pattern of racketeering activity. *See generally* Frohnmayer *et al.*, 18 Willamette L Rev at 7.

Following the adoption of the Oregon statute, the United States Supreme Court held that, even under the more narrowly drawn federal statute, "enterprise" encompasses both legitimate and illegitimate entities. *United States v. Turkette*, 452 US 576, 101 S Ct 2524, 69 L Ed 2d 246 (1981). Lower federal courts have followed suit, holding that an enterprise may be an entirely legitimate and wholly innocent entity through which a defendant conducts a pattern of racketeering activity. *See, e.g., Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F3d 1546, 1558 (1st Cir 1994) (legitimate corporation is an enterprise); *Sun Sav. and Loan Ass'n v. Dierdorff*, 825 F2d 187, 194-95 (9th Cir 1987) (same); *United States v. Blackwood*, 768 F2d 131, 137 (7th Cir), *cert den* 474 US 1020 (1985) (county circuit court is an enterprise); *see also* Thomas S. O'Neill, *Note: Functions of the RICO Enterprise Concept*, 64 Notre Dame L Rev 646, 675-77 (1989).

We reject, therefore, defendant's argument that Woodburn Auction Yard cannot constitute an enterprise within the meaning of ORS 166.715, merely because it was not engaged in a common scheme with defendant to sell stolen horses. Defendant's only other argument on the matter is that the state is precluded from asserting that Woodburn Auction Yard is an enterprise, because the state did not allege that in its indictment. That argument, asserted for the first time at oral argument on appeal, was not preserved, and we do not address it. We conclude that the trial court did not err in denying defendant's motion for judgment of acquittal on the ground that the state had failed to establish the existence of an "enterprise" within the meaning of the Oregon racketeering statute.

Defendant next assigns error to the trial court's ruling on the admissibility of the state's testimony that the police officers would not have refused to talk with him merely because he desired to have an attorney present. According to defendant, the testimony is irrelevant and prejudicial in that it constitutes an impermissible comment on his invocation of his right to remain silent. The state argues that the testimony was relevant to counter the testimony of defendant's own witness. As to the constitutional objection, the state argues that, because defendant made no such objection at trial, he cannot assert it on appeal.

We agree with the state that the only issue preserved is the relevance of the testimony. Evidence is relevant if it "even slightly" increases or decreases the probability of the existence of any material fact at issue. *State v. Hampton*, 317 Or 251, 255, 855 P2d 621 (1993). This is a "very low threshold." *Id.* at 255 n 8. We review the trial court's decision to determine whether there is evidence in the record to support it. *Id.* at 254.

In this case, there is such evidence. The officers' testimony was directly contrary to the testimony of defendant's witness, Wivag. If the jury chose to believe the officers on the matter of whether they would have talked to him in the presence of an attorney, they might reasonably have been more willing to believe that Wivag was untruthful when he denied that defendant had admitted to him that he stole the horses. The trial court did not err in overruling defendant's relevancy objection.

Next, defendant assigns error to the trial court's refusal to allow defendant to present a witness on surrebuttal. We review that decision for an abuse of discretion. *See State ex rel Johnson v. Dale*, 277 Or 359, 366, 560 P2d 650 (1977). We find, without discussion, no abuse of discretion.

Defendant next assigns error to the court's failure to merge his five theft convictions into his racketeering conviction. The state argues that the trial court properly refused to merge the convictions. We review the trial court's decision as a matter of law. *State v. Crotsley*, 308 Or 272, 275, 779 P2d 600 (1989).

ORS 161.067(1) provides:

"When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

Under that statute, convictions do not merge if the defining statutes contain different elements. In deciding whether the statutes contain different elements, we look solely to the relevant statutory elements, and not to the specific facts of the case before us. *State v. Petrie*, 139 Or App 474, 477, 912 P2d

913 (1996); *State v. Sargent*, 110 Or App 194, 196, 822 P2d 726 (1991).

The statute defining racketeering, ORS 166.720(3), requires proof of the existence of an "enterprise." That is not an element of either first-degree theft by receiving or aggravated first-degree theft by receiving. ORS 164.055; ORS 164.057. Similarly, the statutes defining first-degree theft by receiving and aggravated first-degree theft by receiving require proof of "theft" as defined in ORS 164.015. That is not required to prove racketeering, which may be proved by establishing predicate offenses not involving theft, such as securities fraud, prostitution and homicide.

■      Defendant persists, arguing that, because ORS 166.720 defines "racketeering activity" as the commission of any number of offenses, including theft, all of the elements of theft are necessarily included in the statutory definition of racketeering. We rejected a similar argument in *State v. Wallock/Hara*, 110 Or App 109, 113, 821 P2d 435 (1991), *rev den* 313 Or 75 (1992), in which we held that a defendant's convictions for racketeering and for the predicate offense of prostitution do not merge even though the same conduct forms the basis for all of the convictions. *See also Petrie*, 139 Or App at 477; *State v. Hessel*, 117 Or App 113, 122, 844 P2d 209 (1992), *rev den* 318 Or 26 (1993); *Sargent*, 110 Or App at 196; *State v. Heneghan*, 108 Or App 637, 638, 816 P2d 1175 (1991), *rev den* 312 Or 588 (1992). The trial court did not err in failing to merge the convictions.

■ ■ Finally, defendant assigns error to the trial court's order that defendant's sentences on each of the five theft convictions run consecutively to the sentence for racketeering. The state argues that, in *State v. Blossom*, 88 Or App 75, 79, 744 P2d 281 (1987), *rev den* 305 Or 22 (1988), we approved the imposition of consecutive sentences for racketeering and the underlying predicate offenses. Defendant argues that our decision in *Blossom* simply is incorrect.

We review the trial court's imposition of consecutive sentences for an abuse of discretion. ORS 137.123(5). We decline to reexamine our holding in *Blossom* and consequently conclude, without further discussion, that the trial

court did not abuse its discretion in ordering consecutive sentences in this case.

Affirmed.