Submitted September 6, 2016; remanded for resentencing, otherwise affirmed
August 30, 2017

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**DEREK ORTEGA-GONSALEZ,**
aka Derek Ortega-Gonzales,
*Defendant-Appellant.*

Klamath County Circuit Court
1301085CR; A158258

404 P3d 1081

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Meredith Allen, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and Shorr, Judge, and Aoyagi, Judge.

**SHORR, J.**

Defendant appeals a judgment of conviction for one count of racketeering, ORS 166.720(1) (Count 1), and five counts of unlawful delivery of methamphetamine, ORS 475.890(2) (Counts 6, 7, 8, 9, and 10). On appeal, defendant raises two assignments of error, both regarding the sentences that the trial court imposed as to Counts 6 and 7. Defendant contends that the trial court erred when it calculated his criminal history score on Counts 6 and 7, and that the trial court erred when it sentenced Counts 6 and 7 consecutively to Count 1. As to defendant's first assignment of error, we agree that the trial court erred when it recalculated defendant's criminal history score on Counts 6 and 7 after first considering his conviction for Count 1 as a prior conviction in defendant's criminal history. However, as to defendant's second assignment of error, we conclude that the trial court did not err when it ordered the sentences on Counts 6 and 7 be served consecutively to Count 1.

This case is based on a series of transactions in which an agent from the Bureau of Alcohol, Tobacco, and Firearms (BATF) purchased two and one-half pounds of methamphetamine and 14 guns from defendant over the span of approximately five months. During this time, the BATF agent learned that defendant was part of a "family network" that spanned "Mexico to Utah to Fresno to Yakima." That network provided defendant with connections to multiple sources and large quantities of methamphetamine. Defendant was charged by indictment with two counts of racketeering, ORS 166.720(1) and (4), and eight counts of unlawful delivery of methamphetamine, ORS 475.890(2).

Defendant subsequently pleaded guilty to Counts 1, 6, 7, 8, 9, and 10 of the first amended indictment.[1] Count 1, racketeering, alleged that, "on or between October 1, 2012 and May 14, 2013," defendant "unlawfully and intentionally" participated in an "enterprise through a pattern of racketeering activity" that consisted of two or more of the eight listed predicate acts. The facts of the eight listed predicate acts as to Count 1 also form the factual basis for the

---

[1] The trial court dismissed Counts 2, 3, 4, and 5 on the state's motion.

charges of unlawful delivery of methamphetamines alleged in Counts 3 through 10.

At sentencing, the state requested that defendant be sentenced to a total of 216 months in prison; the trial court imposed a total sentence of 205 months based on the following. First, the court determined defendant's grid block on the Oregon Felony Sentencing Guidelines Grid for Count 1 and concluded that defendant's criminal history score for Count 1 was "I" because he had "no criminal history" prior to his involvement in this case. Next, the court assigned a crime seriousness score as to Count 1. Based on the quantity of drugs and weapons involved in the transactions, the court concluded that the seriousness score of the racketeering charge was 11. The court remarked, "I think that it's my responsibility to send a clear message to the community that this behavior is not going to be tolerated" because "I have never had someone in front of me who dealt this much drugs in my community." The court sentenced defendant to 120 months on Count 1. Applying defendant's just determined criminal history score on Count 1 to Count 6, the court concluded that defendant's grid block was 9-G and imposed 40 months' prison, to be served consecutively to the sentence on Count 1. On Count 7, the court, now using the two felonies in Counts 1 and 6 as part of defendant's criminal history, concluded that defendant was a 9-F on the grid and sentenced him to 45 months to be served consecutively to the sentence on Count 6. On Counts 8, 9, and 10, the court imposed concurrent sentences: Count 8 (grid block 8-F, 24 months' prison), Count 9 (grid block 9-E, 50 months' prison), and Count 10 (grid block 9-E, 50 months' prison).

On appeal, defendant advances two assignments of error. First, defendant contends that the trial court erred when it increased his criminal history score on Counts 6 and 7 based on Count 1 because, under ORS 131.505(4), Counts 6 and 7 are from the "same criminal episode" as Count 1. Second, defendant contends that the trial court erred when it ordered that defendant's sentences on Counts 6 and 7 were to be served consecutively to the sentence on Count 1 because the racketeering charge and its predicates form a "continuous and uninterrupted" course of conduct under ORS 137.123(2), meaning that they could not be sentenced

consecutively without findings under ORS 137.123(5)(a) or (b), which the trial court did not make.

As a preliminary matter, we reject the state's argument that any error as to defendant's first assignment of error was harmless. We will affirm a judgment even though we determine that the trial court erred in sentencing when the record shows that the trial court could have imposed the same total sentence without the error and we are "completely confident" that the trial court would impose the same sentence if the case were remanded for resentencing. *State v. Calderon-Ortiz*, 222 Or App 1, 8, 191 P3d 808 (2008), *rev den*, 345 Or 618 (2009). Although the record in this case demonstrates that the trial court wanted to "send a clear message to the community" that this type of behavior would not be tolerated, we cannot be sure that the exact number of months in prison that the trial court imposed, 205, had any significance beyond being the total of the aggregated sentences. Indeed, the trial court did not sentence defendant to the 216 months in prison requested by the state. Here, unlike in *Calderon-Ortiz*, in which we were "completely confident" that the trial court would impose the same sentence on remand when the trial court stated at sentencing, "I want to get to the 180 months," it is unclear whether the trial court had 205 months as a specific sentencing goal—or whether that was merely the total of the sentences imposed. *See* 222 Or App at 4. Consequently, we cannot conclude that the court would impose the same sentence on remand, and therefore any error as to the first assignment of error was not harmless. *See State v. Carter*, 272 Or App 161, 163, 354 P3d 764 (2015) (remanding for resentencing when we were not certain that the court would impose the same sentence even though they could).

Defendant's first assignment of error presents a question of law, although the answer may depend on "predicate findings of historical fact." *State v. Potter*, 236 Or App 74, 82, 234 P3d 1073 (2010). Nearly all felonies in Oregon have a corresponding presumptive sentence on Oregon's sentencing guidelines grid, determined by the intersection of the number corresponding to the crime seriousness score and the letter corresponding to the individual defendant's

criminal history score. *State v. Cuevas*, 358 Or 147, 149, 361 P3d 581 (2015).

Generally, the trial court calculates a defendant's criminal history score based on multiple factors, including the number and severity of the defendant's prior convictions. *Id.* at 161; OAR 213-004-0006. When multiple convictions are sentenced in a single sentencing proceeding, the trial court may include the sentence imposed on the first-sentenced conviction as part of the defendant's criminal history in determining the sentence for the second conviction, "unless the convictions arose out of a single criminal episode." *Cuevas*, 358 Or at 149-50.

To determine whether two crimes are from the same criminal episode for the purposes of calculating a defendant's criminal history score, we consider whether, in accordance with former jeopardy principles, the counts had to be prosecuted together. *State v. Witherspoon*, 250 Or App 316, 321-22, 280 P3d 1004 (2012). Accordingly, we first look to whether the crimes are cross-related and consider the statutory definition of criminal episode that governs our former jeopardy analysis. *State v. Dulfu*, 282 Or App 209, 223, 386 P3d 85 (2016), *rev allowed*, 361 Or 100 (2017). Under ORS 131.505(4), crimes arise from the same criminal episode when they are part of "continuous and uninterrupted conduct that * * * is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective." *See, e.g., Dulfu*, 282 Or App at 223; *State v. Tooley*, 265 Or App 30, 39-41, 333 P3d 348, *rev den*, 356 Or 575 (2014).

When "a complete account of one crime necessarily includes details of the other," the crimes are "cross-related." *State v. Boyd*, 271 Or 558, 567, 533 P2d 795 (1975); *see also Witherspoon*, 250 Or App at 322 (applying the *Boyd* test in the context of criminal sentencing history). If the crimes are cross-related, then separate prosecution of each crime would violate former jeopardy principles and the crimes are considered to be from the same criminal episode. *Potter*, 236 Or App at 83. Even if the crimes are not cross-related, they may still form part of the same "criminal episode" under the factors of ORS 131.505(4). *Witherspoon*, 250 Or App at

322. In addition, we have considered a "defendant's right, as embodied in ORS 131.515(2), to be free from being required to answer more than once for the same act or transaction." *State v. Lyons*, 161 Or App 355, 362, 985 P2d 204 (1999) (internal quotation marks omitted).

Defendant argues that, applying the standard discussed above, based on the nature of a charge of racketeering and our holding in *Lyons*, Counts 6 and 7 are a part of the same criminal episode as Count 1.

The state does not directly dispute or respond to defendant's contention that the proper test for determining whether defendant's conviction on Count 1 can be used to calculate his criminal history score on Counts 6 and 7 is the statutory former jeopardy analysis. Instead, to support its argument that former jeopardy did not bar the sentence imposed in this case, the state calls attention to evidence that the legislature intended racketeering to be considered a separate and distinct crime from its predicates. The state specifically points to the fact that, under ORS 166.715(4), the statutory jeopardy bars of ORS 131.505 to 131.525 (addressing former jeopardy rules applied to adult crimes) and ORS 419A.190 (addressing former jeopardy rules when applied to acts done by juveniles) no longer apply, and the fact that the state may establish a pattern of racketeering activity based on conduct that had previously been the subject of an adult or juvenile criminal prosecution or adjudication. To further support its position, the state also relies on the contention that a charge of racketeering does not merge with its predicates for the purposes of sentencing.

We first reject the state's merger argument. A merger analysis does not apply to the determination of a defendant's criminal history score. There is an established standard for determining whether crimes sentenced in the same proceeding can affect each other's criminal history score, *Cuevas*, 358 Or at 149-50, and we see no reason—and the state offers none—to depart from that standard here. Further, we have previously noted that the fact that two statutes have different elements "pertains to the legality of consecutive punishments and convictions * * * not successive prosecutions." *Lyons*, 161 Or App at 364 (so stating as to

racketeering). "That is so because, with respect to multiple punishments, additional elements demonstrate a legislative intent to provide for new penal prohibitions and consecutive sentences that, in turn, justify consecutive punishment." *Id.*; *see State v. Wallock/Hara*, 110 Or App 109, 113, 821 P2d 435 (1991), *rev den*, 313 Or 75 (1992) (merger depends on whether the crimes have different elements, and "[i]t makes no difference that the same conduct is the basis for all of the convictions"); *State v. Blossom*, 88 Or App 75, 78-79, 744 P2d 281 (1987), *rev den*, 305 Or 22 (1988) (holding that the Oregon racketeering statute, based on the federal racketeering statute, was intended to allow for separate convictions and consecutive sentences for the racketeering offense and its predicate crimes).

Accordingly, we start our analysis with the standard that we have previously applied in cases such as this: whether the crimes could be separately prosecuted under statutory former jeopardy principles or must be prosecuted together as part of the same criminal episode.

In *Lyons*, we addressed whether racketeering and its predicate acts formed the same criminal episode for the purposes of former jeopardy. 161 Or App at 359. First, we considered the definition of "same criminal episode" in ORS 131.505(4) and whether the crimes were cross-related as discussed in *Boyd*. *Id.* at 361. Although the defendant's racketeering charge and its predicates were "continuous and uninterrupted" in the sense that racketeering is a charge that bonds the predicate acts by their nexus to the criminal enterprise and consists of different crimes spanning a particular date range to constitute one crime, we concluded that that relationship did not "satisfy perfectly" the statutory definition because, although when viewed in the context of a racketeering charge the predicate acts share a common criminal objective, "standing alone their criminal objectives are distinct." *Id.* at 363. In addition, the crimes are not cross-related because, "although proof of the [racketeering] violation depends on proof of the predicates, the same is not true in reverse." *Id.*

Ultimately, we held that it was the underlying policy of finality, prohibiting the reprosecution of factual issues

already resolved by an earlier prosecution that was dispositive. *Id.* That consideration "focuses on the *conduct* on which criminal culpability rests in the later prosecution and whether that conduct already has been litigated in a previous prosecution." *Id.* (emphasis in original). The conduct charged in the racketeering indictment was factually identical to the conduct described and resolved in the defendant's earlier prosecutions. *Id.* at 364. Therefore, the racketeering prosecution required reprosecution of factual issues already resolved by the defendant's earlier prosecutions, and we concluded that the racketeering charge and its predicates were from the same criminal episode. *Id.* at 364-65. Given the absence of any legislative intent "to limit in the context of [a racketeering] charge the protections against successive prosecutions provided by ORS 131.515(2)," we concluded that the racketeering charge and its predicates were part of the same criminal episode for the purposes of former jeopardy. *Id.* at 365 (footnote omitted).

Accordingly, the only element that remained to be determined was whether the prosecutor had the requisite knowledge of the existence of a pattern of racketeering activity at the start of the second or third prosecution on the predicate acts. *Id.*; *see* ORS 131.515(2) (stating that "[n]o person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution"). We remanded for a finding on that fact. *Id.*

Before we apply the analysis of *Lyons* to this case, we consider a statutory change noted by the state and referenced in a footnote in *Lyons*. *Lyons* applied the pre-1997 version of the racketeering statute. 161 Or App at 357 n 1. In 1997, the legislature changed the definition of "pattern of racketeering activity" to provide that,

> "[n]otwithstanding ORS 131.505 to 131.525 or 419A.190 or any other provision of law providing that a previous prosecution is a bar to a subsequent prosecution, conduct that constitutes an incident of racketeering activity may be used to establish a pattern of racketeering activity without regard to whether the conduct previously has been the subject of a criminal prosecution or conviction * * *."

ORS 166.715(4). As a result, a defendant may now be charged with racketeering based on predicate acts that, standing alone, were the subject of prior convictions or prosecutions. The statutory former jeopardy protections will not apply to bar a subsequent charge of racketeering, regardless of whether a prosecutor reasonably knew at an earlier time that a defendant's actions constituted racketeering activity.

This case presents the converse of the issue presented in *Lyons* and described in ORS 166.715(4)—whether it violates former jeopardy principles for a defendant to be convicted of a pattern of racketeering activity and subsequently prosecuted for the individual predicate acts as stand-alone counts.[2] ORS 166.715(4) only references the use of conduct that has previously "been the subject of a criminal prosecution or conviction" to establish the predicate acts for a later racketeering charge; it does not extend its removal of the former jeopardy protection looking at the situation in reverse. Stated differently, if, under *Lyons*, a racketeering charge and its predicates charged as separate crimes would constitute the same criminal episode, a prosecutor, who "reasonably knows" about the separate crimes at the time that the defendant is prosecuted for racketeering, would be barred from later prosecuting the defendant for the stand-alone crimes. This is because ORS 166.715(4) would not remove the bar imposed by the prosecutor's knowledge of the predicate acts under ORS 131.515(2) to later prosecution under the former jeopardy statute.

Thus, although the statute has changed since the version that we applied in *Lyons*, this change does not affect the application of *Lyons* to this case; nor is it, as the state contends, dispositive of the outcome. *Lyons* held that racketeering and its predicates formed a single criminal episode for the purposes of former jeopardy under ORS 131.515(2), although this was not strictly based on the definition of "same criminal episode" in ORS 131.505(4). Accordingly, *Lyons* demonstrates that our interpretation of the definition

---

[2] As noted, here the trial court first sentenced defendant on the racketeering charge and then used that charge as part of defendant's criminal history when sentencing defendant for the unlawful delivery charges, which were predicate acts of the racketeering charge.

of "same criminal episode" under ORS 131.505(4) is informed by the former jeopardy statute, ORS 131.515(2). In *Potter*, we reiterated the principle discussed in *Lyons* that, "[i]n evaluating [whether the crimes are cross-related and applying the definition of same criminal episode], a court must also consider the legislative policy embodied in ORS 131.515(2)." *Potter*, 236 Or App at 83. "[I]n using the phrase 'based upon the same criminal episode,' the legislature established a policy of finality for the defendant's benefit that prohibits the reprosecution of factual issues already resolved by an earlier prosecution." *Id.* at 84. Similarly, in *Witherspoon*, we cautioned against interpreting "criminal objective" as it is used in ORS 131.505(4) in a way that would "improperly parse" it. 250 Or App at 325 n 5 (citing *Boyd*, 271 Or at 565 n 4, for the proposition that ORS 131.505(4) is to be interpreted so as to "afford a defendant the protection that our constitution provides against successive prosecutions").

As was the case in *Lyons*, the facts that make up Counts 6 and 7, both delivery of a controlled substance, are identical to the facts alleged as predicate acts 4 and 5 of Count 1. Applying *Lyons*'s construction of ORS 131.505(4) in light of ORS 131.515(2), Counts 6 and 7 could not have been prosecuted later in time than Count 1 on the basis that it would require the "reprosecution of factual issues already resolved by earlier cases." *See* 161 Or App at 364. The 1997 amendment to ORS 166.715(4), which now permits the state to first prosecute individual criminal acts and later still prosecute those same acts as predicate racketeering acts as part of a separate racketeering case, did not otherwise change *Lyons*. It does not permit the state to prosecute the racketeering charge and its underlying predicate acts, and then later charge those same predicate acts as stand-alone crimes in a later prosecution.

The state acknowledges that the facts alleged in the predicate acts are the same facts that make up the acts separately charged in Counts 6 and 7. However, the state contends that that fact is immaterial because Count 1 also listed predicate acts that occurred earlier in time to Counts 6 and 7. Thus, according to the state, when defendant pleaded guilty to Count 1, the state had proved that defendant had

committed acts sufficient to constitute racketeering prior to and regardless of the acts described in Counts 6 and 7. As a result, Counts 6 and 7 could not be part of the same criminal episode as Count 1 because they were not necessary to proving Count 1. We disagree. Count 1 alleged a date range that squarely encompasses Counts 6 and 7: October 1, 2012 to May 14, 2013. We therefore conclude that, because Counts 6 and 7 could not have been prosecuted subsequently to Count 1, which included the same conduct charged as predicate racketeering acts, Counts 1, 6, and 7 constitute the same criminal episode. It was an error for the trial court to use defendant's criminal history score on Count 1 to affect his criminal history score on Counts 6 and 7.

In defendant's second assignment of error, he contends that the trial court erred when it sentenced Counts 6 and 7 consecutively to Count 1. In response, the state first contends that defendant's argument as to this assignment of error is only partially preserved.

In general, claims of error not raised to the trial court will not be considered on appeal. *State v. Walker,* 350 Or 540, 548, 258 P3d 1228 (2011). The rule of preservation under ORAP 5.45(1) "gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal." *Peeples v. Lampert,* 345 Or 209, 219, 191 P3d 637 (2008). The objection should be specific enough to "permit [the trial court] to consider and correct the error immediately, if correction is warranted." *State v. Nguyen,* 222 Or App 55, 65, 191 P3d 767 (2008), *rev den,* 345 Or 690 (2009) (internal quotation marks omitted). Furthermore, the rule of preservation also ensures fairness "by requiring that the positions of the parties are presented clearly to the initial tribunal so that parties are not taken by surprise, misled, or denied opportunities to meet an argument." *Walker,* 350 Or at 548 (internal quotation marks omitted).

Defendant's objection under the second assignment of error to the trial court and on appeal originates generally from ORS 137.123. ORS 137.123(2) allows the trial court to impose consecutive sentences on crimes sentenced in the

same proceeding if the crimes do not arise from the same "continuous and uninterrupted course of conduct."[3] In addition, ORS 137.123(5) provides that a court has discretion to sentence even those crimes arising out of a continuous and uninterrupted course of conduct consecutively "only if" it makes the findings listed under subsection (a) or (b).[4]

In his sentencing memorandum, defendant objected to sentencing Counts 6 and 7 consecutively to Count 1 because, "[a]ll the delivery counts, while perhaps separate criminal episodes from each other, are nevertheless part of the same criminal episode as the racketeering. Under this proposition, the statutory requirements for the court to impose consecutive sentences aren't met under ORS 137.123(2)." At the sentencing hearing, the state referenced *State v. Bucholz*, 317 Or 309, 855 P2d 1100 (1993), *State v. Miller*, 317 Or 297, 855 P2d 1093 (1993), and *Blossom*, 88 Or App 75. The state argued that the delivery counts "formed separate criminal episodes" and, therefore, "they can all be stacked." The trial court noted defendant's sentencing memorandum with defendant's objection under ORS 137.123(2) and proceeded to sentence Counts 6 and 7 consecutively to Count 1 without explicitly making the findings listed under ORS 137.123(5)(a) or (b). Defendant did not raise any further objection to the trial court on the basis of a lack of findings.

On appeal, defendant contends that the trial court erred in sentencing Counts 6 and 7 consecutively to Count 1 because the court did not make the factual findings required in order to impose consecutive sentences under ORS 137.123(5)(a) or (b). Defendant argues that the citation to ORS 137.123(2) in his written memorandum was sufficient to preserve the argument he makes on appeal under ORS

---

[3] ORS 137.123(2) provides:

"If a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct, or if the defendant previously was sentenced by any other court within the United States to a sentence which the defendant has not yet completed, the court may impose a sentence concurrent with or consecutive to the other sentence or sentences."

[4] ORS 137.123(5) provides, in part, "The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court [makes findings listed in subsections (a) and (b).]"

137.123(5)(a) and (b) because it "alerted the court to the idea that its authority to impose consecutive sentences is different depending on whether the crimes arose from the same continuous and uninterrupted course of conduct[.]"

While defendant's objection below surely alerted the trial court, and the state, to his argument that Counts 6 and 7 could not be sentenced consecutively to Count 1 because they arose from a continuous and uninterrupted course of conduct, defendant did not specifically object to the trial court's failure to make factual findings when it imposed the sentence. In *Bucholz*, 317 Or at 320, the court held that the defendant's objection to a lack of findings under ORS 137.123 (5)(a) and (b) was not preserved when, although the "defendant expressly was aware that a consecutive sentence was being imposed," the defendant did not make any objection to the lack of findings. Similarly, here, without some objection to the trial court's failure to make findings, neither the state nor the court would have understood that defendant objected to its failure to make findings. Applying the principles of preservation, requiring that objections are specific and clear, in presenting the trial court with an opportunity to correct the error, and giving the adverse party a chance to respond, we conclude that defendant's argument under ORS 137.123(5)(a) and (b) is not preserved.

In light of our above conclusion, we consider defendant's second assignment of error in the limited context of his contention that Counts 6 and 7, which were listed as predicate acts for his racketeering charge, Count 1, should not have been sentenced consecutively to Count 1.

We first considered whether racketeering and its predicates, when charged as separate offenses, could be sentenced consecutively in *Blossom*, 88 Or App 75. Without a statutory directive on point, as *Blossom* involved conduct that was committed before ORS 137.123 took effect in December 1986, *Blossom* considered how federal courts that were interpreting the federal racketeering statute were dealing with the question. *Id.* at 79; *see State v. Crotsley*, 308 Or 272, 276 n 3, 779 P2d 600 (1989) (stating the effective date of ORS 137.123). Noting that "federal courts have determined that the intent of Congress was clearly to provide for new

penal prohibitions and enhanced sanctions including separate convictions and consecutive sentences for the RICO and predicate offenses," we held that "the trial court did not err in imposing multiple convictions and consecutive sentences for the racketeering and [its predicate offenses]." *Id.*

Defendant argues that it would be wrong for us to apply *Blossom* in this case because *Blossom* was not decided under ORS 137.123. However, defendant also acknowledges that, in *State v. Gleason*, 141 Or App 485, 493, 919 P2d 1184 (1996), decided after ORS 137.123 was enacted, we considered the holding in *Blossom* as to consecutive sentencing and "decline[d] to reexamine our holding in *Blossom.*" We "conclude[d] * * * that the trial court did not abuse its discretion in ordering consecutive sentences." *Id.* Here, defendant argues that we do not have to rely on *Gleason* because "its reasoning is unclear," and, because it relies on *Blossom*, "it is incorrect for the same reason that *Blossom* is incorrect." Nevertheless, beyond defendant's disagreement with the holding and analysis in *Gleason*, he has failed to articulate what has changed so as to cause us to reconsider our decision in *Gleason*, in which we explicitly declined to reexamine our prior holding in *Blossom*, that a trial court may impose consecutive sentences as to racketeering and its predicates. Without such a reason, we decline to do so.[5]

In summary, as we explained in *Blossom* and reaffirmed in *Gleason*, the trial court did not err when it ordered that defendant serve the sentences on Counts 6 and 7 consecutively to Count 1. However, the trial court erred when it used defendant's criminal history score on Count 1 to calculate his criminal history score on Counts 6 and 7 because, under our former jeopardy analysis, those counts constitute the same criminal episode. That error was not harmless. We therefore remand this case for resentencing.

Remanded for resentencing; otherwise affirmed.

---

[5] The principle of *stare decisis* dictates that we should assume that our fully considered prior cases are correctly decided. In other words, the principle of *stare decisis* means that the party seeking to change a precedent must affirmatively persuade us that it is clearly wrong. *Farmers Ins. Co. v. Mowry*, 350 Or 686, 692, 261 P3d 1 (2011).