Submitted February 24, 2020, reversed and remanded February 24, 2022

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RYAN JOHN BRANDES,
*Defendant-Appellant.*

### Washington County Circuit Court
18CR20692; A169204

506 P3d 431

Defendant appeals a judgment convicting him of driving under the influence of intoxicants (Count 1), reckless driving (Count 2), and recklessly endangering another person (Count 3). Defendant argues that the trial court erred in denying his motion to suppress evidence of his refusal to take a breath test and in instructing the jury that it could consider that refusal as evidence of his guilt because, under *State v. Banks*, 364 Or 332, 434 P3d 361 (2019), his refusal constituted the invocation of his constitutional right to refuse to consent to a warrantless search and was therefore inadmissible. *Held*: Viewing the totality of the circumstances, the state failed to meet its burden to establish the admissibility of defendant's breath-test refusal under *Banks* where nothing in the record established the circumstances of the officer's breath-test question. Moreover, defendant verbally assenting while physically refusing to take the breath test was not sufficient evidence to satisfy the state's burden, because his conduct, which was communicating mixed messages, was ambiguous. Therefore, the trial court erred in allowing evidence of defendant's refusal and in giving the challenged instruction. The error was not harmless as to all counts.

Reversed and remanded.

Eric Butterfield, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

ORTEGA, P. J.

Reversed and remanded.

## ORTEGA, P. J.

Defendant appeals a judgment convicting him of felony driving under the influence of intoxicants (DUII), ORS 813.010[1] (Count 1); reckless driving, ORS 811.140 (Count 2); and recklessly endangering another person, ORS 163.195 (Count 3). The court sat as factfinder on Counts 2 and 3; the verdict on Count 1 was based on a unanimous jury verdict. Defendant asserts three bases for reversal of those verdicts.

First, defendant argues that, on Count 1, the trial court erred in instructing the jury that it could reach a nonunanimous verdict and that the error entitles him to reversal because it constituted structural or plain error. Although we agree that the jury instruction was erroneous under *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), for the reasons explained by the Oregon Supreme Court in *State v. Flores Ramos*, 367 Or 292, 319, 478 P3d 515, (2020), and *State v. Chorney-Phillips*, 367 Or 355, 359, 478 P3d 504 (2020), we reject defendant's structural and plain error arguments. Defendant is therefore not entitled to reversal on that basis.

Next, defendant argues that the trial court erred in denying his motion to suppress evidence of his refusal to take a breath test and in instructing the jury that it could consider that refusal as evidence, asserting two legal grounds. First, defendant contends that the admission of his breath-test refusal violated his Article I, section 9, right to be free from warrantless searches because, under *State v. Banks*, 364 Or 332, 434 P3d 361 (2019) (*Banks II*), his refusal constituted the invocation of his constitutional right to refuse to consent to a warrantless search and was therefore inadmissible. Second, defendant argues that his Article I, section 12, *Miranda* rights were violated, because the officer's request that he take a breath test constituted improper interrogation after he had invoked his right to counsel. The state responds that defendant failed to preserve the arguments he makes on appeal and that, in any event, the trial court did not commit any error, plain or otherwise.

---

[1] Following defendant's conviction, ORS 813.010 was amended. *See* Or Laws 2021, ch 490, § 1. However, we refer to the current version of the statute because those amendments do not affect our analysis.

As we will explain, we conclude that defendant's arguments are preserved and that his breath test refusal was inadmissible under Article I, section 9, which obviates the need to address his Article I, section 12, argument. We therefore reverse and remand.

In reviewing the trial court's denial of a motion to suppress, we accept the trial court's factual findings that are constitutionally supported by the evidence and determine "whether the trial court applied legal principles correctly to those facts." *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). We limit our discussion of the facts to the record that developed at the pretrial hearing, *State v. Pitt*, 352 Or 566, 575, 293 P3d 1002 (2012), noting where certain facts were in dispute and providing more detailed facts as they become relevant in our discussion. Further, although resolution of this case turns on defendant's Article I, section 9, argument, we provide the relevant background facts related to defendant's Article I, section 12, argument, as well as defendant's Article I, section 11, argument that he raised below but abandons on appeal, as necessary context for the state's preservation challenge.

Officer Boyll arrested defendant for DUII and, after taking him into custody, advised him of his *Miranda* rights. Defendant indicated that he understood his rights but did not ask to speak to an attorney or invoke his right to remain silent at that point. Boyll transported defendant to the police station.[2]

At the station, Boyll read defendant his "implied consent" under the implied consent laws[3] and then, at defendant's

---

[2] It is unclear from the motion-to-suppress hearing transcript whether Boyll read defendant his *Miranda* rights at the scene or at the police station.

[3] We understand Boyll's testimony that he read defendant his "implied consent" to refer to the statutory rights and consequences of which officers are required to inform defendants under the implied consent laws before a breath test may be administered. *See* ORS 813.100 (providing that "[b]efore [a chemical test of a person's breath or blood for alcohol content] is administered the person requested to take the test shall be informed of consequences and rights as described under ORS 813.130"); ORS 813.130 (setting forth the "information about rights and consequences for purposes of ORS 813.100 and 813.410"). However, Boyll did not provide any testimony to explain the required statutory information or describe the specific information that he provided to defendant. Further, the Implied Consent Combined Report, which is the standard form that officers read to defendants before asking them to take a breath test, was not

request, brought him to a secluded room equipped with a phone book and an Oregon State Bar directory and afforded him the opportunity to call an attorney. Boyll then placed defendant back in handcuffs, escorted him to a different room, and asked him to take a breath test. Defendant made four or five attempts to provide a breath sample but, based partially on defendant's physical conduct, Boyll believed that defendant was intentionally preventing the machine from recording a breath sample and ultimately concluded that defendant had refused the breath test.

Before trial, defendant moved to suppress his breath-test refusal on three legal grounds, all raised in written memoranda. First, defendant argued that Boyll's request that he take a breath test after placing him in custody and after he had invoked his right to counsel constituted unlawful interrogation under Article I, section 12. Second, defendant argued that his right to counsel under Article I, section 11, was violated because Boyll did not provide him with sufficient time to consult with an attorney before requiring him to decide whether to take a breath test. *See State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988) (holding that "an arrested driver has the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test" under Article I, section 11).

Third, defendant argued that his right under Article I, section 9, to refuse a warrantless search would be violated by admission of his breath-test refusal. Although he did not contest that his actions amounted to refusing to take the breath test, he maintained that, in refusing, he was "[d]eclining to supply consent to a warrantless search," which "is not the same as obstructing a valid search." He contended that, "[a]lthough a person does not have the right to resist the government in obtaining evidence if they have a warrant nor [if a] warrant exception [applies], the person does not have to consent to the search and seizure." Here, according to defendant, Boyll chose not to rely on a warrant

---

admitted into evidence at the motion-to-suppress hearing. *See State v. Swan*, 363 Or 121, 127 n 4, 420 P3d 9 (2018) ("The Implied Consent Combined Report is an administrative form prepared by the Department of Transportation to comply with multiple statutory directives.").

or warrant exception to conduct the search of his breath, but instead relied on defendant's consent—yet defendant had a constitutional right to withhold that consent without it being used as substantive evidence of his guilt. Defendant noted that, although this court had decided against his Article I, section 9, argument in *State v. Banks*, 286 Or App 718, 401 P3d 1234 (2017) (*Banks I*), *rev'd*, 364 Or 332, 434 P3d 361 (2019), the Oregon Supreme Court had accepted review in that case to address that argument.

Defendant later filed a supplemental memorandum in support of his motion to suppress, alerting the court that the Oregon Supreme Court had accepted review of *State v. Koch*, 289 Or App 642, 412 P3d 1216 (2017) (*Koch I*), *rev dismissed as improvidently allowed*, 365 Or 658 (2019) (*Koch II*), to resolve whether a request to take a breath test constitutes interrogation under Article I, section 12. In *Koch I*, which we affirmed without opinion, the defendant had argued in relevant part that *State v. Swan*, 276 Or App 192, 201, 366 P3d 802 (2016) *(Swan I)*, *rev'd on other grounds*, 363 Or 121, 420 P3d 9 (2018) *(Swan II)*, where we held that asking a suspect to take a breath test does not constitute interrogation under Article I, section 12, was wrongly decided. Defendant here attached to his supplemental memorandum, as legal support, the defendant's brief that was filed in *Koch I*.

At the hearing on defendant's motion to suppress, Boyll testified to the circumstances surrounding defendant's request to speak to an attorney, giving conflicting testimony as to whether defendant had asked to make a phone call generally, or whether he had specifically requested to speak to an attorney. Further, the state elicited testimony from Boyll regarding the amount of time he gave defendant to consult with an attorney, the details of how he had advised defendant of his *Miranda* rights, defendant's response that he understood those rights, and that defendant did not invoke his right to remain silent or request an attorney at the time he was advised of those rights. Boyll also testified to the circumstances surrounding his request that defendant take a breath test and defendant's response. In response to the question, "How was [defendant's] behavior after he said he would take the breath test?" Boyll testified as follows:

"[Defendant] was making the facial expressions ***
like he was blowing into the machine, but there was no
audible tone coming from the machine like it's supposed to,
so I kept coaching him how to get a proper sample. He kept
saying he wasn't refusing and that he was trying to give a
sample, but *** he ultimately wouldn't or couldn't.

"So, I even took out a mouthpiece, a separate one and
blew into *** the mouthpiece to show how easy it is and he
still made the facial expressions like he's blowing as hard
as he could, but *** no audible tone came out. So, after
four, five attempts, I consider that a refusal because he
wasn't following instructions."

In closing, defendant argued that he was not given
a reasonable amount of time to consult with an attorney
before deciding whether to take the breath test. The court
denied defendant's motion and his request for findings, com-
menting, "I trust our appellate courts to figure it out."

At trial, Boyll testified to the circumstances sur-
rounding defendant's breath test and that he considered
defendant's conduct to constitute a refusal, and the state
submitted the Implied Consent Combined Report, which
indicated that defendant had refused the breath test. Over
defendant's objection, the court gave Uniform Criminal Jury
Instruction (UCrJI) 2712, providing:

"If you find that the defendant refused to submit to a
chemical test of his breath after being advised of his rights
and the consequences of his refusal, you may consider his
refusal to submit to the breath test in determining whether
he was or was not under the influence of intoxicants. You
may give his refusal to submit to the breath test such
weight as you feel is appropriate in reaching your verdict."

The jury convicted defendant, and this appeal followed.

On appeal, defendant argues that the trial court
erred in denying his motion to suppress evidence of his
breath-test refusal and in instructing the jury that it could
consider that evidence in determining his guilt. Although
defendant abandons his Article I, section 11, right-to-
counsel challenge, he otherwise raises the same arguments
he made below. Specifically, he argues that he was improp-
erly interrogated under Article I, section 12, because, under

that provision, asking a suspect in custody to take a breath test after he has invoked his right to counsel constitutes improper interrogation, and that *Swan I* and the cases it relied on, which concluded otherwise, were wrongly decided. Further, defendant argues that the admission of his breath-test refusal violated his right under Article I, section 9, to refuse a warrantless search under the new rule announced in *Banks II*, which was decided following his conviction. As previously noted, the state responds that defendant failed to preserve those arguments and that, even if preserved, the trial court did not commit any error.

We begin by addressing the state's preservation challenge. Before the evidentiary portion of the suppression hearing, the state summarized the legal issues before the court that day:

> "[State:]  Your honor, *** my understanding of my reading of *** defendant's motion to suppress is that the defense is not challenging the validity of the stop or anything that has to do with the field sobriety tests.

> "The issue in this motion is very narrow and it really has to do with a timeline of what occurs after defendant's taken into custody. Is [defendant] given a reasonable opportunity to talk to an attorney, did he invoke his right *** to remain silent or to counsel and was there a custodial interrogation. Does asking for permission to take a breath test *** constitute an unreasonable search. So, just kind of to limit those issues and not have to go through the entire stop."

The court responded, "[t]hat was my understanding based on the motion," and then asked defense counsel, "Is that correct?" The following is defense counsel's response and subsequent colloquy with the court, which underlies the state's preservation challenge:

> "[Defense counsel:]  Yeah. You know, I stepped out for some of it, but if I heard correctly—

> "[The court:]  You're just trying to keep out the refusal?

> "[Defense counsel:]  It's exactly it, yep.

> "[The court:]  Okay. And *** the basis for that is just whether or not he had adequate opportunity to consult—

"[Defense counsel:]    Yeah.

"[The court:]    —with counsel, essentially.

"[Defense counsel:]    That's exactly right.

"[The court:]    Okay. Thank you. Did you have any opening remarks, [Defense Counsel]? I've read your motion and the supplemental memorandum.

"[Defense counsel:]    Right. It's just going to come down to, you know, ability to call out on that telephone. How much time was allowed to call out on the telephone to consult counsel."

The state concedes that defendant's written memoranda in support of his motion to suppress before the trial court included the arguments under Article I, sections 9 and 12, that he now raises on appeal. Further, the state acknowledges that the rules of preservation do not require that parties orally reiterate all of their written legal arguments at the hearing on their motions. However, according to the state, "[w]hen asked to clarify the issues," defendant communicated to the court that suppression "hinged on one, and only one, legal argument," which was whether he was afforded sufficient time under Article I, section 11, to consult with counsel. That representation, the state contends, "effectively informed" the trial court and the state that he was electing to proceed on that single issue and "effectively waiv[ing] or abandon[ing] the remaining arguments in his written submissions." We disagree.

In general, if an issue has not been presented to the trial court, we will not consider it on appeal. *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008); ORAP 5.45(1). The purposes of the preservation rule are pragmatic. *State v. Walker*, 350 Or 540, 550, 258 P3d 1228 (2011). One purpose is to ensure that "a trial court [has] the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal." *Peeples*, 345 Or at 219. The rule also "ensures fairness to opposing parties, by requiring that the positions of the parties are presented clearly to the initial tribunal so that parties are not taken by surprise, misled, or denied opportunities to meet an

argument." *Walker*, 350 Or at 548 (internal quotation marks omitted). Here, we conclude that the purposes of preservation were served.

To begin, defendant's statements and conduct at the hearing that focused only on his Article I, section 11, argument did not, viewed in the context of then-controlling law, communicate to the court that he was electing to proceed only on that legal basis. Defendant alerted the court and state that then-controlling law did not support his Article I, sections 9 and 12, arguments, but that both issues were pending review before the Supreme Court. Therefore, we understand defendant's statements and conduct at the hearing, including his representation that his motion to suppress is "just going to come down to, you know *** [h]ow much time was allowed to call out on the telephone to consult counsel," viewed in context of then-controlling law, to express his intent to *focus his efforts* at the hearing on his Article I, section 11, argument and not that the *legal bases* of his motion to suppress had changed to include only that legal argument. *See Bell v. Hendricks*, 301 Or App 216, 220, 456 P3d 378 (2019), *rev den*, 366 Or 292 (2020) (rejecting respondent's argument that petitioner's arguments were not preserved because, "[i]n light of then-controlling authority, which treated petitioner's *** motion as a mechanism to preserve his claims, he did everything that could be reasonably expected to present the motion and related claims to the court"); *see Peeples*, 345 Or at 220 ("What is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument."). The state concedes that defendant's written memoranda included all three of his legal arguments. At that point, defendant, who did not have the burden of proof, was free to focus his efforts at the hearing on his motion to suppress on his Article I, section 11, argument, which was the only one that then-controlling law had not decided against him and was, therefore, his strongest. *See Banks II*, 364 Or at 343 ("When the state seeks admission of a defendant's refusal to take a breath test, the state, as the proponent of the evidence, has the burden to establish its admissibility."); *State v. Mejia*, 287 Or App 17, 22, 401 P3d 1222 (2017) ("[W]e have consistently held that an issue is preserved for our review if it is presented clearly in

a written motion, notwithstanding a party's failure to reiterate all of its arguments at a subsequent hearing."); *State v. Parnell*, 278 Or App 260, 373 P3d 1252 (2016) (explaining that a written motion to suppress "frames the issues that the court will be required to decide, and it notifies the state of the contentions that it must be prepared to address at the hearing on the motion" (internal quotation marks omitted)). Our understanding of defendant's statements appears consistent with the trial court's view because, although having just agreed with the state that it understood defendant to be making all three of the legal arguments in his written memoranda, when the court asked defendant to confirm that the court and the parties were on the same page with defendant's legal challenges, the court summarized only defendant's Article I, section 11, argument.

Moreover, there is nothing in the record to suggest that the state or the trial court understood defendant's statements or conduct at the hearing as the state now asserts. As an initial matter, we disagree with the state's premise that, when the court asked defendant, "Is that correct?" the court was asking defendant to "clarify" the issues. When the state initiated the discussion at the beginning of the hearing, it was summarizing the legal issues that defendant's motion implicated to "just kind of to limit those issues and not have to go through the entire stop." And, in summarizing what those issues were, the state included, based on its "reading of * * * [defendant's] motion to suppress," all three of defendant's legal arguments raised in his written memoranda. The court agreed, stating "[t]hat was my understanding based on the motion." Further, when the court later invited opening remarks, it told defendant, "I've read your motion and the supplemental memorandum," essentially cuing defendant that he need not summarize all of the arguments in his written materials because the court had read and understood them. Indeed, the state did not limit Boyll's testimony to issues related only to defendant's Article I, section 11, challenge, but also focused on the other issues. Thus, the record reflects that the state and the court understood that all three of the legal issues that defendant had raised in his written memoranda were before the court. We thus proceed to address the merits.

We begin by addressing defendant's argument that his breath-test refusal was inadmissible under Article I, section 9, because the success of his Article I, section 12, challenge depends in part on the outcome of that legal issue. *See State v. Shevyakov*, 311 Or App 82, 90, 489 P3d 580 (2021) (concluding that "asking for consent to search, including requesting that a suspect perform the physical [field sobriety tests], constitutes impermissible interrogation [under Article I, section 12,] *unless the law precludes the use of a person's refusal against the person at trial*" (emphasis added)).

To frame the parties' arguments, we begin by summarizing the applicable law. Article I, section 9, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." Or Const, Art I, § 9. "A search of one's breath is protected under that provision." *Banks II*, 364 Or at 337. Therefore, unless an exception to the warrant requirement applies, Article I, section 9, mandates that law enforcement obtain a warrant before conducting a search. *Id.*; *see* Or Const, Art I, § 9 ("[N]o warrant shall issue but upon probable cause."). One such exception is when a person voluntarily consents to the search, "thereby waiving the right to insist that the government obtain a warrant." *Banks II*, 364 Or at 337-38. However, when a person refuses to provide consent and, instead, asserts the person's constitutional right to insist that the government obtain a warrant, that refusal may not be admitted at trial as evidence of the person's guilt. *Id.* at 342.

In *Banks II*, 364 Or 332, the Oregon Supreme Court changed the legal landscape in DUII prosecutions by announcing a new test for determining the admissibility of a breath-test refusal against a defendant in a DUII prosecution. In that case, the defendant was involved in a single-car accident and was arrested at the scene and transported to the police station after officers determined that he was intoxicated. *Id.* at 334. At the station, the officer informed the defendant that he was there because he had been in a crash and "'smelled of an alcoholic beverage pretty strongly,'" and the officer

"explain[ed] that he was 'going to read [defendant] some information' and that he would 'like [defendant] to open [his] mouth.' When [the officer] asked defendant, 'Can I look into your mouth,' defendant responded, 'No.' [The officer] then explained that, 'if you don't [open it], then I can't help you maybe take a breath test.' After defendant responded that he would not open his mouth, [the officer] read defendant the 'rights and consequences' required by law. [The officer] explained that defendant was 'about to be asked to submit to a breath test * * * under the implied consent law, and he provided information on the consequences for refusing or failing the test, including that his refusal to submit to the breath test 'may be offered against [him].' After reading the form, [the officer] asked defendant, '[W]ill you take a breath test?' Defendant responded that he would not."

*Id.*at 334-35 (ellipsis in original; some brackets in original). The trial court admitted the defendant's breath-test refusal over his objection. *Id.* at 335.

Following his conviction, the defendant appealed, arguing in relevant part that the trial court had erred in denying his motion to suppress evidence of his refusal to consent to the breath test because that refusal constituted an assertion of his constitutional right under Article I, section 9, to refuse to provide his consent to a warrantless search. *Id.* at 336. The state argued in response that

"when [the officer] asked defendant to take a breath test, [the officer] was not asking defendant to provide a constitutional basis for that search; rather, [the officer] had a constitutional basis for the search provided by another warrant exception—probable cause and exigent circumstances—and was seeking only defendant's agreement to submit to the requested test. The state argues that defendant's refusal to take the breath test was a refusal to perform a physical act and not an invocation of his constitutional right to insist on a warrant."

*Id.* at 340.

In answering that issue, the court explained that, under the statutory scheme of the implied consent laws,

"an officer's question to a driver asking whether the driver will take a breath test may be either (1) a request under

ORS 813.140 for express consent to search the driver's breath that, if given, will supply a constitutional basis for the test; or (2) a request under ORS 813.100 that the driver 'submit' to a breath test that finds its constitutional justification elsewhere. Stated another way, a driver's refusal to answer that question affirmatively may be either an invocation of a constitutional right or a refusal to cooperate without constitutional significance."

*Id.* at 342 (footnote omitted). Based on that framing, the court announced the test to determine the admissibility of a defendant's breath-test refusal in a DUII prosecution. The court first explained that the state, as the party seeking admission of the refusal, has the burden to establish its admissibility. *Id.* at 343. Next, the court held that, to meet that burden, the "state must demonstrate that the officer's question could reasonably be understood only as a request to provide physical cooperation and not as a request for constitutionally-significant consent to search." If the state does not meet its burden to establish that fact, the driver's refusal is inadmissible at trial to prove the driver's guilt. *Id.*

Applying the test to the facts of that case, the court held that the state did not meet its burden to establish the admissibility of the defendant's refusal. The court explained that the officer's question, "'[W]ill you take a breath test?' was ambiguous," because it could have been either a request for the defendant "to physically submit to a test that was justified by a warrant exception," or it "could have been asking defendant for his consent to search, thereby establishing a warrant exception." *Id.* (bracket in original). Further, the court stated that, although the officer had told the defendant that "he would be asked to submit to a breath test 'under the implied consent law,' *** he did not specify the aspect of the implied-consent law to which he was referring." *Id.*

Here, defendant argues that the state likewise failed to meet its burden to establish the admissibility of his breath-test refusal. He contends that, like in *Banks II*, Boyll's request was ambiguous as to whether he was requesting physical cooperation or seeking constitutionally significant consent. Therefore, according to defendant, his breath-test refusal was inadmissible under Article I, section 9, and the court erred in concluding otherwise. As

such, defendant argues that the uniform jury instruction on breath-test refusals (UCrJI 2712), which told the jury that it could consider his breath-test refusal as evidence of his guilt, inaccurately stated the law under *Banks II*. Therefore, in defendant's view, the trial court also erred in giving that jury instruction.

In responding to that argument, the state begins by asking us to view *Banks II* as requiring an evaluation of the totality of the circumstances. It urges that, although the *Banks II* test focuses on the circumstances surrounding the officer's request, the "ultimate question is *not* how the officer phrased the request" but rather, "Did the defendant invoke his constitutional rights, or was he merely refusing to provide physical cooperation?" (Emphasis in original.) The state concedes that the officer's phrasing of the question is a fact that will bear on the determination of that ultimate issue. However, according to the state, the assessment of whether the defendant has exercised a constitutional right must nonetheless be made in light of the totality of the circumstances as it is in other legal contexts, such as when determining the scope of a defendant's consent to search. *See State v. J. D. H.*, 294 Or App 364, 370, 432 P3d 297 (2018), *rev den*, 364 Or 409 (2019).

With that reframing, the state argues that, here, the record establishes that *defendant understood* Boyll's request to be for physical compliance with a test that was justified by a warrant exception, and not that Boyll was seeking defendant's consent to supply a constitutional basis to conduct the search. That is so, the state continues, because, although defendant "expressly consented" to take the breath test, he only pretended to blow into the machine. Defendant's physical conduct, in the state's view, was "quite literally, a refusal to perform the physical act necessary for the constitutionally-authorized search." Thus, the state contends, under *Banks II*, defendant's breath-test refusal was admissible at trial and the trial court did not err in allowing evidence of it or in giving the challenged instruction.

Although we agree with the state that *Banks II* does not preclude an assessment of the totality of the circumstances, we nonetheless conclude that, even with such

an assessment, the state failed to meet its burden to establish the admissibility of defendant's breath-test refusal.

To begin, we do not read *Banks II* as establishing that the *only* way the state can meet its burden is by looking to the framing of the officer's question. Although the court's formulation of the test in *Banks II* focused on the nature of the officer's question, the court's analysis was necessarily framed by the record before it. In that case, the only relevant facts bearing on the ultimate issue were the circumstances surrounding the officer's question itself. Indeed, the state, in framing its argument to the court, focused on the officer's breath-test question. The court, in turn, responded and focused on the circumstances of the officer's question in formulating the test. There simply were no other facts in *Banks II* that were relevant to resolving the ultimate issue; we do not understand the court to have foreclosed an analysis of the totality of the circumstances. *See Banks II*, 364 Or at 342 (explaining that, under the implied consent statutes, an officer's question to a defendant may be a request for express consent or a request to physically submit to the test or, "[s]*tated another way*, a driver's refusal to answer that question affirmatively may be either an invocation of a constitutional right or a refusal to cooperate without constitutional significance" (emphasis added)).

Moreover, a review of the totality of the circumstances, including the officer's phrasing of the question, when determining whether "a driver's refusal to answer [the breath-test] question affirmatively [is] either an invocation of a constitutional right or a refusal to cooperate without constitutional significance," *Banks II*, 364 Or at 342, is consistent with the determination of whether a defendant has invoked a constitutional right in other comparable circumstances. *See, e.g.*, *State v. Blair*, 361 Or 527, 537, 396 P3d 908 (2017) (scope of consent based on the totality of the circumstances); *State v. Moore*, 354 Or 493, 505, 318 P3d 1113 (2013), *adh'd to as modified on recons*, 354 Or 835, 322 P3d 486 (2014) ("In reviewing the voluntariness of a defendant's consent to a search, we consider whether, under the totality of the circumstances, the consent was given by an act of free will or was the result of coercion, express or implied."); *see*

*also State v. Roberts*, 291 Or App 124, 131-32, 418 P3d 41 (2018) ("We review whether defendant invoked his [Article I, section 12, right to an attorney] by considering his statement in the context of the totality of circumstances existing at the time of and preceding their utterance to determine whether a reasonable officer would understand that defendant was invoking his rights." (Internal quotation marks omitted.)).

Nonetheless, on this record, even considering the totality of the circumstances, the state has not met its burden to establish the admissibility of defendant's breath-test refusal. For a start, the record does not establish precisely how Boyll asked defendant to take the breath test or provide any other information to illuminate the nature of the request itself. The only evidence bearing on that fact was the following colloquy:

> "[State:]  After you had [defendant] come out of the Intoxilizer room, you went through the observation period *and you asked him to take a breath test*?
>
> "[Boyll:]  *Yes, I did.*"

(Emphases added.) That testimony does not tell us how the question was phrased, or whether Boyll provided any other information that may have communicated to defendant that Boyll was seeking only his physical cooperation because he had constitutional justification to conduct the search, or whether he was seeking defendant's express consent to provide the legal basis for the search. As in *Banks II*, we do not know whether Boyll informed defendant under which aspect of the implied consent law he was seeking consent. We are cognizant that, at the time of the suppression hearing, *Banks II* had not yet been decided and the state, therefore, did not have the benefit of that test when developing its record. Nevertheless, we are obligated to apply the law at the time the appeal is decided. *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) ("Error, in general, must be determined by the law existing at the time the appeal is decided, and not as of the time of trial."). On this record, we conclude that, like in *Banks II*, Boyll's request to defendant does not meet the state's burden.

Defendant's physical refusal to comply with the test, even considering his verbal indication that he would comply, also does not meet the state's burden here. The state asks us to rely on defendant's physical conduct in pretending to blow into the machine, coupled with his oral communication that he "was trying to give a sample," as sufficient evidence that he was refusing to physically cooperate with the test and was not asserting his constitutional right to refuse a warrantless search. To begin, defendant's nonverbal conduct does not necessarily support the inference that is favored by the state here. Nonverbal conduct can constitute a manifestation of consent to search, or, in other words, the waiver of a constitutional right. Likewise, nonverbal conduct can also constitute the assertion of a constitutional right. *See State v. Briggs*, 257 Or App 738, 742, 307 P3d 564, *rev den*, 354 Or 386 (2013) ("Consent [under Article I, section 9,] may be manifested by conduct as well as words."); *id*. at 741, 743-44 (concluding that officers had lawful consent to enter a hotel room in pursuit of a DUII suspect when, in response to the officer's statement to the woman who answered the door, "I need to talk to the person that just ran in here," the woman stepped aside, motioned to the back of the room, and told the officer that the defendant was in the back); *State v. Larson*, 141 Or App 186, 189, 196-99, 917 P2d 519, *rev den*, 324 Or 229 (1996) (concluding that the defendant manifested voluntary consent when he responded to the officer's request to search his van by, without speaking, removing the keys from his pocket, unlocking the door, pressing the door release and opening the door, and then stepping back to allow the officer's entry); *State v. Fish*, 321 Or 48, 59, 893 P2d 1023 (1995) ("Under Article I, section 12, 'testimonial' evidence is not limited to verbal statements of fact or disbelief. Rather, \*\*\* 'testimonial' evidence includes any evidence of conduct communicating the individual's state of mind.").[4]

---

[4] Although the parties do not rely on this aspect of the court's opinion, we note that, in *Banks II*, the court stated that it was "only [addressing] a defendant's *verbal* exercise of a constitutional right." 364 Or at 348 n 10 (emphasis added). However, in context, we do not understand that statement to mean that a person cannot invoke that person's constitutional right to refuse to consent by nonverbal conduct. That is because, immediately preceding that statement, the court explained that, "[a]lthough a defendant has a right to refuse consent, a defendant may not have the right to physically obstruct law enforcement officers who are executing an otherwise lawful search." *Id*. Further, related to that same

Also, the fact that defendant was verbally assenting while physically refusing does not alter his constitutional right to refuse a warrantless search. That is so because a person always retains the right to revoke even constitutionally significant voluntary consent. *See, e.g.*, *State v. Ford*, 220 Or App 247, 251, 185 P3d 550 (2008) (describing the consent exception to the warrant requirement as being "when the person consents to the search and has not expressly revoked that consent").

Moreover, the state did not satisfy its burden here based on defendant's verbal and nonverbal conduct that, by all accounts, communicated mixed messages and was therefore ambiguous. *See State v. Martin*, 222 Or App 138, 140-41, 144, 193 P3d 993 (2008), *rev den*, 345 Or 690 (2009) (concluding that the state failed to meet its burden to prove that the defendant's "ambiguous" conduct constituted consent to the officer's warrantless entry into her home, where the defendant "flung open the door" in response to the officer's knocking and "ran into a back bedroom" leaving the door open). Without additional evidence clarifying defendant's understanding of the question posed, the constitutionality of the search, and his own conduct, defendant's ambiguous communication here cannot establish that defendant's noncompliance was a conscious refusal to cooperate physically, not a refusal to consent to a warrantless search.

Simply put, in the absence of evidence about the question to which defendant was responding or any other

---

discussion, the court cited the following passage from the Ninth Circuit, stating that "'[h]ad [the defendant] *forcibly resisted* the entry into her apartment, we might have a different case. We express no opinion on that question. We only hold that her *passive refusal* to consent to a warrantless search is privileged conduct which cannot be considered as evidence of criminal wrongdoing.'" *Id.* at 347 (quoting *United States v. Prescott,* 581 F2d 1343, 1351 (9th Cir 1978) (emphases added; some brackets in *Banks II*)). Thus, we understand the court's statement, viewed in context, to draw a distinction between a defendant's exercise of her constitutional right to refuse to consent to a search, whether verbal or "passively" nonverbal, and a defendant's *physical obstruction* to an otherwise lawful search, which may not be constitutionally protected. We do not understand the court to have meant by that statement that a person cannot invoke her constitutional right to refuse to consent by nonverbal conduct, which would be inconsistent with other areas of constitutional law in which a person can manifest the invocation of a constitutional right through nonverbal conduct. Indeed, a person who does not have the ability to communicate verbally would necessarily have to invoke her constitutional right through nonverbal conduct.

facts that would bear on the *Banks II* inquiry, the state has not met its burden to establish that defendant's ambiguous messaging was sufficient evidence on its own to establish that he was refusing to physically cooperate with the breath test and was not invoking his constitutional right to refuse consent to a warrantless search. He could have been doing both—physically refusing to cooperate to refuse a warrantless search.

Accordingly, because the state did not meet its burden, evidence of defendant's refusal to take the breath test was not admissible under Article I, section 9, and the trial court erred in denying defendant's motion to suppress on that basis. In light of that conclusion, the trial court likewise erred in instructing the jury that it could consider that refusal as substantive evidence of defendant's guilt. *See State v. Bistrika*, 261 Or App 710, 728, 322 P3d 583, *rev den*, 356 Or 397 (2014) (explaining that one way for a trial court to commit instructional error is to provide a jury instruction that inaccurately states the legal rule to apply to the facts).

Having concluded that the trial court erred, we must determine whether those errors were harmless. Or Const, Art VII (Amended), § 3 (a reviewing court must affirm a conviction despite a legal error if the error was harmless). An error is harmless if, after reviewing the entire record, we can say that there is little likelihood that it affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). As to Count 1, we readily conclude that the erroneous admission of the breath test results and the instruction allowing the jury to consider that evidence in determining defendant's guilt was not harmless. In closing, the state emphasized the error, including arguing to the jury that the only reason a person would refuse to take the breath test is because "they know they're not going to pass." That error was further compounded by the state's jury instruction, which allowed the jury to infer, based on defendant's refusal, that he was intoxicated. *See Fish*, 321 Or at 56 ("In offering an individual's refusal to perform field sobriety tests into evidence, the state wants the jury to infer from the fact of an individual's refusal that he or she is saying, 'I refuse to perform field sobriety tests because I believe I will fail them.'"); *see also*

*State v. Ramirez-Carmona*, 313 Or App 533, 537-38, 495 P3d 213 (2021) (concluding that the trial court's error in allowing evidence of defendant's refusal to perform field sobriety tests in a DUII prosecution was not harmless where, given the nature of the evidence, jury may have relied on that refusal to convict).

We likewise conclude that the erroneous admission of the breath-test results was not harmless as to the court's verdict on Count 2 (reckless driving) and Count 3 (recklessly endangering another person). During the bench trial, the state asked the court to consider "defendant's degree of intoxication when he gets behind a wheel and the manner in which he drives" to prove the mental state elements of Counts 2 and 3, and it continued to emphasize defendant's intoxication as supporting those convictions. Because the court may have improperly relied on defendant's refusal as evidence of his intoxication, we cannot conclude that the error had a likelihood of affecting its verdict on Counts 2 and 3. *See State v. Marks*, 286 Or App 775, 784-85, 400 P3d 951 (2017) (concluding that error was not harmless in a bench trial where it was not clear from the record whether the trial court considered the erroneously admitted evidence in reaching its verdict). Accordingly, we reverse and remand.

Reversed and remanded.